**TARRANT COUNTY HOSPITAL DISTRICT, Relator,**

v.

**Hon. William L. HUGHES, Jr., Respondent.**

**No. 2–86–231–CV.**

Court of Appeals of Texas, Fort Worth.

April 9, 1987.

Rehearing Denied Aug. 12, 1987.

Tim Curry, Dist. Atty., and Sullivan H. Bradley, Jr., Asst. Dist. Atty., Fort Worth, for relator.

Dushman, Friedman & Brady, and Lowell H. Dushman, Fort Worth, for respondent.

FARRIS, Justice.

Relator, Tarrant County Hospital District, seeks the issuance of a writ of mandamus to compel the Hon. William L. Hughes, Jr., Judge of the 48th District Court of Tarrant County, Texas, to rescind his order of October 16, 1986, entered in cause number 48–95022–86, styled Belinda C. Jackson, in behalf of the estate of Tristianne O. Jackson, deceased v. Tarrant County Hospital District, d/b/a John Peter Smith Hospital, which order compels relator as defendant to produce and make available to the plaintiff certain documents identifying blood donors.

We grant relator's motion for leave to file the petition, but deny the relief requested herein.

The cause of action giving rise to the matter in controversy is a suit for wrongful death brought by the plaintiff, individually and in behalf of the estate of the plaintiff's deceased daughter, against the relator. Plaintiff's original petition alleges that the deceased was given blood transfusions by relator which resulted in her contracting Acquired Immune Deficiency Syndrome (AIDS), and in the death of the deceased. Plaintiff accuses relator of failing to exercise the degree of care and the skill and treatment that is ordinarily exercised by and expected of the defendant (medical malpractice) as well as a failure to provide a wholesome blood product (implied warranty). The relator as defendant an-

swered by general denial. Plaintiff served the defendant with a request for production of documents requesting, in relevant part, the production of information pertaining to the names and addresses of blood donors. Relator filed its objection to the production of the information relating to blood donors and sought protective orders of the trial court. The trial court overruled the discovery objection and ordered that the relator disclose the identities and addresses of the blood donors. The court also ordered the plaintiff to not directly or indirectly contact any donor nor undertake further discovery regarding such donors until permitted to do so by further order of the court.

The scope of discovery largely rests within the discretion of the trial court. *Jordan v. Ct. of App. for Fourth Sup. Jud. Dist.*, 701 S.W.2d 644, 648–49 (Tex. 1985). A party opposing discovery bears the burden of establishing a discovery privilege. *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex.1986); *Jordan*, 701 S.W.2d at 649; *Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex.1985).

In its petition for writ of mandamus, relator contends that the order complained of violates TEX.R.EVID. 509, that it violates the blood donors' constitutional right to privacy, and that the societal interest in maintaining a healthy and effective blood donor program clearly overrides any legitimate interest of the plaintiff in the disclosure of the blood donors' identities.

■ We hold that the physician-patient privilege expressed in TEX.R.EVID. 509 is not applicable. Under rule 509, a "patient" is defined to mean any person who consults or is seen by a physician to receive medical care. A "physician" is defined as a person licensed to practice medicine. Nothing in the record reflects that the blood donors were seen by a physician or received medical care when they donated blood.

In support of its contentions that the discovery order violates the donor's right to privacy and adversely affects the interest of society in maintaining a healthy and effective blood donor program, relator cites *South Florida Blood Serv. v. Rasmussen*, 467 So.2d 798 (Fla.App.—3d Dist.1985); [1] *aff'd*, 500 So.2d 533 (Fla.1987). Rasmussen received 51 units of blood in the treatment of injuries incurred in an automobile accident. Subsequently, Rasmussen was diagnosed as having AIDS. Rasmussen sued the owner and operator of the other motor vehicle involved in the accident and served subpoena duces tecum on South Florida Blood Services, Inc., seeking "any and all records, documents, and other material indicating the names and addresses of the blood donors." South Florida Blood Services, not a party to the lawsuit, moved to quash the subpoena on the grounds that Rasmussen had failed to show good cause or justifiable reason for the invasion of the private confidential records of the blood service and its volunteer donors. The majority of the District Court of Appeals of Florida, 3rd District, held that the subpoena violated the donors' privacy interest and society's interest in a strong and healthy volunteer blood donation program and quashed plaintiff's subpoena.

The District Court of Appeals in *Rasmussen* acknowledged that the plaintiff had a legitimate interest in determining the identities of the blood donors because he could recover additional damages from the defendants if it could be shown that his AIDS was caused by blood transfusions necessitated by the injuries he suffered in the automobile accident, but his interest in the information was held slight when compared with the opposing interests. *See South Florida Blood Serv. v. Rasmussen*, 467 So.2d at 801. The District Court of Appeals in *Rasmussen* characterized its decision as one establishing that the Federal and State Constitutions [2] are sources of

---

1. A discussion of *Rasmussen* is important to the determination of this case because its facts are uniquely similar to the facts of the instant case.

2. Right of privacy.—Every natural person has the right to be let alone and free from govern-

mental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law. FLA.CONST. Art. I, sec. 23.

privacy interest which must be scrutinized when raised in challenge of a discovery order. *Id.* at 803. In arriving at its decision, the District Court of Appeals determined that the blood donors' privacy interests were constitutionally based, that court orders which compel, restrict or prohibit discovery constitute State action subject to constitutional limitations, and that the court would apply a balancing test comparing the interest served by the State action with interests encroached upon by that action. *Id.*

The District Court of Appeals in *Rasmussen* also held that, on the facts of the case, after balancing all interest involved, discovery should not be allowed because the court found a free flow of donated blood of sufficient public importance when combined with the privacy interest of the donors to outweigh Rasmussen's interest in discovering the donors' identity. *Id.* at 804. In support of its conclusion, the court adopted the argument of South Florida Blood Services that because the blood of volunteer donors was less likely to be contaminated with infectious diseases than that of paid donors, the confidentiality of blood service records was essential in order to maintain a voluntary blood donation system sufficient to meet societal demands for blood and blood products. *Id.*

The District Court of Appeals certified to the Florida Supreme Court the following as a question of great public importance:

Do the privacy interests of volunteer blood donors and a blood service's and society's interest in maintaining a strong volunteer blood donation system outweigh a plaintiff's interest in discovering the names and addresses of the blood donors in the hope that further discovery will provide some evidence that he contracted AIDS from transfusions necessitated by injuries which are the subject of his suit?

The Florida Supreme Court answered the question in the affirmative and approved the decision of the lower court. *See Rasmussen v. South Florida Blood Serv.*, 500 So.2d at 534.

The Supreme Court of Florida acknowledged that the blood donors' rights of privacy are protected by the Federal and Florida Constitutions, but stated that it need not engage in the strict scrutiny mandated by constitutional analysis because it found that the interests involved were adequately protected under Florida discovery rules. *Id.* at 535. The court noted that Florida rules of discovery confer broad discretion on a trial court to protect a party from "annoyance, embarrassment, oppression or undue burden or expense." *Id.* In its opinion, the Supreme Court of Florida discussed the express right of privacy contained in the Florida Constitution and the discussion which preceded its adoption, stating that a principal aim of the provision was to afford individuals some protection against the increasing collection, retention and use of information relating to all facets of individual lives. *Id.* at 536. The Supreme Court concluded that the disclosure sought by Rasmussen implicated constitutionally protected privacy interests. *Id.* at 537. The court also concluded that society's interest in a strong and healthy blood supply would be furthered by denial of the discovery sought by Rasmussen. *Id.* at 538.

Neither the Federal Constitution nor our State Constitution expressly mentions any right of privacy. Detailed discussions of the recognition of a constitutional right of privacy may be found in *Roe v. Wade*, 410 U.S. 113, 152–53, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973); *Ind. Foundation v. Texas Ind. Acc. Bd.*, 540 S.W.2d 668, 678–80 (Tex.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977); *Ex parte Abell*, 613 S.W.2d 255, 265–69 (Tex.1981) (Spears, J. dissenting). The term "right of privacy" is a generic term encompassing various rights recognized in decisions of the United States Supreme Court as well as in other federal and state courts. *See* 16B C.J.S. *Right of Privacy* sec. 630 (1985). The right of privacy has been held to protect the right of individuals to make certain decisions, without governmental interference, with regard to highly personal matters, *e.g.*, *Roe v. Wade*. Most privacy cases decided by the United States Supreme

Court have involved the rights of individuals to make such autonomous decisions.

.A second general area of "right of privacy" protects rights of individuals to prevent unlimited disclosure of personal information, *e.g., Whalen v. Roe,* 429 U.S. 589, 598–600, 97 S.Ct. 869, 875–77, 51 L.Ed.2d 64 (1977). An individual's medical records have been declared to be within a zone of privacy protected by the Federal Constitution. *Id.* at 601, 97 S.Ct. at 877; *G.M.C. v. Director of Nat. Institute,* 636 F.2d 163, 166 (6th Cir.1980); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3rd Cir.1980); *E.I. duPont de Nemours & Co. v. Finklea,* 442 F.Supp. 821, 825 (W.Va. S.Dist.1977). Although the courts in each of the four cited cases recognized that the right of privacy extends to one's medical records, their opinions are of little comfort to the relator because, in each, the complained of activity was found to not violate the right of the individual. In *Whalen v. Roe,* the Supreme Court reversed a three-judge district court decision holding unconstitutional a State statute requiring the reporting of the names and addresses of all persons who had obtained prescriptions to certain drugs for which there were both a lawful and unlawful market. *Whalen,* 429 U.S. at 592, 97 S.Ct. at 872. The district court had held that the patient identification provisions of the act invaded a doctor-patient relationship which intruded on one of the zones of privacy accorded constitutional protection. *Id.* at 597, 97 S.Ct. at 875. The Supreme Court reversed the district court noting that the State statute provided safeguards against the improper disclosure of the medical records and held that the records did not establish an unconstitutional invasion of any right or liberty protected by the fourteenth amendment.

■ We disagree with the opinions of the Florida courts and hold that the trial court order compelling relator to identify blood donors is not an impermissible violation of their rights to privacy. We further hold that relator has not established a so-cietal interest that overrides the plaintiff's right to discovery of the blood donors' identities.

■ In reaching this decision, we have applied a balancing test comparing the interest served by the State action [3] with the donors' interest in privacy. *Nixon v. Administrator of General Services,* 433 U.S. 425, 459, 97 S.Ct. 2777, 2798, 53 L.Ed.2d 867 (1977). The plaintiff's interest in the identity of the blood donors is legitimate. Without the information, it is unlikely the plaintiff will be able to prosecute her cause of action against the relator. The record does not support relator's contention that the blood donors possess a need of anonymity greater than the plaintiff's need. The trial court's order makes an express finding that the disclosure of the identities and addresses of the donors does not violate a constitutional right of privacy. The trial court's order also affords the donors protection from public disclosure by its direction that the "plaintiff shall not directly or indirectly contact any 'donor' identified through records produced under this order nor undertake further discovery regarding such 'donors' until permitted to do so by further order of this court." The relator has not produced any evidence that would show or tend to show that the information sought by the plaintiff would be used improperly. *duPont,* 442 F.Supp. at 824. The trial court's discovery order includes adequate safeguards against the improper disclosure of the blood donors' identities. *See G.M.C. v. Director of Nat. Institute,* 636 F.2d at 166. In reaching its conclusions, the Florida Supreme Court noted that the discovery rules of that state allow a trial judge, upon good cause shown, to set conditions under which discovery will be given. *See* FLA.R.CIV.P. 1.280(c) and that some method could be formulated to verify a blood service's report that none of the donors was a known AIDS victim while preserving the confidentiality of the donors' identity. In a footnote to its opinion, the Supreme Court noted that South Flor-

---

**3.** A court order which compels or restricts pretrial discovery constitutes State action which is subject to constitutional limitations. *Seattle* *Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

ida Blood Service had stated that none of Rasmussen's 51 donors appeared in a list of identified AIDS victims; however, the court agreed with Rasmussen that he should not have to rely on the Blood Service's statement. *Rasmussen v. South Florida Blood Serv.*, 500 So.2d at 537.

■ Texas discovery rules also confer broad discretion upon a trial judge to limit discovery to protect any person against or from whom discovery is sought from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional or property rights. TEX.R. CIV.P. 166b(4). Relator seeks a blanket denial of any discovery of the donors' identities and suggests no conditions limiting the use or publication by the real party in interest of the donors' identities. From the record it appears that the relator has made no effort to determine whether any of its donors have been identified as AIDS victims. Because the trial court's order evidences a proper concern with protection of the individual's right of privacy, we hold that the record does not establish an invasion of any constitutionally protected right for liberty of the blood donors. *See Whalen*, 429 U.S. at 606–07, 97 S.Ct. at 879–80.

■ We also hold that the relator has failed to establish that the court ordered discovery is an abuse of discretion because of injury to any societal interest. We agree with the dissenting opinion of Chief Justice Schwartz of the Florida District Court of Appeals that a determination of injury to society's interest by the limited discovery ordered is no less speculative than a determination that the order would benefit society by discouraging blood donations by those infected with AIDS. *South Florida Blood Serv. v. Rasmussen*, 467 So.2d at 806.

For the reasons stated, we deny the relator's prayer for relief.

SPURLOCK, II, and BURDOCK, JJ., join.

LATTIMORE, J., concurs.

KELTNER, J., files a dissenting opinion in which FENDER, C.J., and HILL, J., join.

LATTIMORE, Justice, concurring.

I concur with the opinion of Justice Farris. We should not assume the occurrence of the worst eventuality. The trial court has it within its power to prevent the consequences not threatened by the parties, but envisioned by the dissenting opinion.

KELTNER, Justice, dissenting.

I respectfully dissent.

This mandamus case comes to us on a sparse record. In fact, we have not been furnished a copy of the discovery requests to which the Hospital District objects. However, all parties candidly admit the source of their disagreement and as a result, we are given enough information to grant leave to file this writ of mandamus.

In reviewing a trial court's actions in a writ of mandamus proceeding, this court cannot substitute its opinion for that of the trial judge. Instead, a writ of mandamus will not issue unless the trial judge clearly abuses his discretion. *Barker v. Dunham*, 551 S.W.2d 41, 42–43 (Tex.1977). Additionally, the party attempting to exclude information from discovery has the affirmative duty to specifically plead and prove the particular privilege or immunity. *Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex.1985); *Jordan v. Ct. of App. for Fourth Sup. Jud. Dist.*, 701 S.W.2d 644, 649 (Tex.1985).

The facts of the underlying case are discussed in the majority opinion. As is revealed by Justice Farris' opinion, we are asked to restrict discovery of the identity and location of blood donors. The defendant's decedent allegedly died of AIDS.[1] The defendant intends to prove that her decedent acquired AIDS through a transfusion of blood carrying the AIDS virus.

The spread of AIDS has been a media event. The hideous results of AIDS combined with the population groups with which it is most commonly associated (ho-

1. Acquired Immunodeficiency Syndrome.

mosexual and bisexual men, intravenous drug users), has caused a mass hysteria.[2] In fact, AIDS has been heralded as the "modern day equivalent of leprosy."[3] *Rasmussen v. South Florida Blood Service*, 467 So.2d 798 (Fla.App.—3d Dist. 1985), *aff'd*, 500 So.2d 533 (Fla.1987).

As a result, social hostility has extended to AIDS victims, no matter how innocently they have acquired the disease. In addition, members of the "suspect groups" are stigmatized regardless if they are not infected with the disease.[4] As a result, the Hospital District asks us to protect the unnamed donors from intrusions into their medical conditions and private lives.

PHYSICIAN–PATIENT PRIVILEGE

In my opinion, the Hospital District has not carried its burden in proving that the identity of the blood donors is shielded from discovery because of the physician-patient privilege. The record before us does not contain a statement of facts. Counsel for both the Hospital District and the respondent admit that an evidentiary hearing was not held on the Hospital District's motion for protective order. This failure to produce proof that a physician-patient relationship existed between the Hospital District and blood donors is necessarily fatal to the Hospital's attempt to avoid disclosing the names of the blood donors.

The physician-client privilege did not exist at common law. 8 WIGMORE, EVIDENCE sec. 2380 (McNaughton rev. 1961). However, the privilege is now established by our rules of evidence. TEX.R.EVID. 509. Justification for the privilege is the well-reasoned policy of encouraging the full communications necessary for effective treatment of a patient by a physician. C. McCORMICK, EVIDENCE sec. 72 (3rd ed. 1984). The primary purpose of the privilege is to protect the patient against an invasion of privacy. *Ex parte Abell*, 613 S.W.2d 255, 263 (Tex.1981). As a result, courts have allowed physicians to assert the privilege on behalf of their patients. *Id.* at 262–63.

It is interesting to note that in a letter brief to the trial judge, the Hospital District contends that the hospital and medical director of the blood bank have the "same duties and responsibilities in regard to a blood donor as they would to any other patient coming under their care." Specifically, the Hospital District contends that the hospital and medical director of the blood bank are required to meet certain standards of care and are obligated to maintain the confidentiality of information collected from the patient in regard to their past and present medical conditions. The Hospital District further points out that the blood collection process is an invasive procedure which has, "readily observable effects on the donor" and carries the possibility for potential "serious adverse reaction." However, the Hospital District does admit that blood donors may not ever actually see or consult with a physician.

Neither this opinion nor the majority opinion passes on whether these contentions, if proved, would bring the information within the physician-patient privilege. However, it is the burden of the Hospital District to actually prove that a physician-patient privilege existed. This case

---

**2.** Seventy-three percent of AIDS victims have been identified as homosexual or bisexual men. Seventeen percent have been identified as heterosexual men and women who are frequent intravenous drug users. Landesman, Ginzburg & Weiss "Special Report: The AIDS Epidemic," 312 New Engl.J.Med. 521 (1985). The other ten percent of AIDS cases have been divided among the following groups: Haitians living in the United States; non-drug-abusing individuals with hemophilia; prisoner population groups; central African immigrants to Europe; female sex partners of persons with AIDS; children of mothers who were high risk for AIDS. *See* Gottlieb, Groopman, Weinstein, "The Acquired Immunodeficiency Syndrome" 99 Ann.Intern.

Med. 208 (1983); Clumeck, Sonnet, Taelman, "Acquired Immunodeficiency Syndrome In African Patients" 310 New Engl.J.Med. 492 (1984).

**3.** At the present time, experts estimate that the mortality rate for AIDS may be as high as forty percent. Blodgett, "Despite the public's hands-off attitude towards AIDS, those who discriminate against the disease's victims are finding no immunity from the law," 12 Student Law. 8 (Jan. 1984).

**4.** *See* N.Y. City Commission on Human Rights, "Gay and Lesbian Discrimination Documentation Project" (1984).

presents a unique situation for the application of the privilege. Unlike most cases where the privilege is raised, actual testimony may have been the only method in which to prove the application of the privilege. Unfortunately, the trial court was not furnished an adequate basis upon which to decide the issue.

As a result, we cannot hold that the trial court abused its discretion in overruling the Hospital District's motion for protective order and allowing discovery of the identity of blood donors.

## RIGHT TO PRIVACY

The Hospital District also claims that the disclosure of the blood donors' identities would violate their right to privacy. Specifically, the Hospital District states, "the only conceivable reason for seeking discovery of the identity and location of these donors is to delve into the medical history and condition of each individual." The Hospital District claims that the information that is likely to be sought by the respondent will include the "intimate details" of the donors' lives, including sexual practices, drug abuse, and medical histories.

The majority opinion discusses the law regarding the constitutional right to privacy. While neither the United States nor the Texas Constitution expressly mention the right to privacy, it has been recognized as a necessary element of individual freedom. *Whalen v. Roe*, 429 U.S. 589, 598–600, 97 S.Ct. 869, 875–877, 51 L.Ed.2d 64 (1977). However, in a complex society, the total right of privacy is infeasible, particularly where disclosure of information is concerned. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

When the right to privacy is raised, courts must entertain a two-step process of inquiry. The court must first determine whether the information sought to be disclosed concerns a fundamental right of privacy, i.e., a protected zone of privacy. *Roe v. Wade*, 410 U.S. at 152–53, 93 S.Ct. at 726–27, 35 L.Ed.2d at 176–77; *Ex parte Abell*, 613 S.W.2d 255, 266 (Tex.1981) (dissenting opinion).[5] If the information sought concerns a fundamental privacy right and thereby falls within a protected zone of privacy, the State must show a compelling interest before invading the zone of privacy. *Roe v. Wade*, 410 U.S. at 155, 93 S.Ct. at 728, 35 L.Ed.2d at 178; *Ex parte Abell*, 613 S.W.2d at 266 (dissenting opinion). On the other hand, if the information does not concern a protected zone of privacy, the court weighs the impact and threat of disclosure against the State interest and disclosure. *Whalen v. Roe*, 429 U.S. at 601, 97 S.Ct. at 877, 51 L.Ed.2d at 75; *Ex parte Abell*, 613 S.W.2d at 266 (dissenting opinion).

At this writing, only certain activities have been found to fall within the protected zone of privacy. Sexual relations within the marriage fall within such a protected zone. *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). Likewise, contraception, [*Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972)]; abortion, [*Roe v. Wade*, 410 U.S. at 113, 93 S.Ct. at 705, 35 L.Ed.2d at 147]; and procreation, [*Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)] have been held to be within the protected zone of privacy. However, a number of essential activities outside marriage have been held not to involve funda-

---

**5.** An analogous fact situation to the instant case was presented in the *Abell* case. That case involved patients of a psychologist who brought actions against him because he had sex with them during their psychotherapy. They sought discovery of the names of other patients with whom the psychologist had sexual contact. The majority in *Abell* held that the information was privileged under the provisions of TEX.REV. CIV.STAT.ANN. art. 5561h (Vernon Supp.1987), *repealed by*, Act of May 17, 1979, ch. 239, 1979 Tex.Gen. Laws 512, 512–515, *amended by* Act of June 19, 1983, ch. 511, secs. 2 and 4, 1983

Tex.Gen. Laws 2970, 2972–73, 2974–75 (presently contained in TEX.R.EVID. 510), and did not discuss the right to privacy issue. However, four justices dissented and discussed the right to privacy claim. (Spears, Campbell, Wallace and Ray). The justices constituting the majority have all left the court.

The dissenting justices with the addition of any one of their colleagues now constitute a majority of the court. As a result, I believe the dissenting opinion casts light on the present thinking of our Supreme Court.

mental areas of privacy. For example, homosexual conduct, [*Bowers v. Hardwick*, — U.S. —, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986)]; adultery, [*McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964)]; and prostitution, [*Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917)] have been held not to involve protected areas of privacy.

In the instant case, it is impossible to determine which, if any, privacy interests may be invaded. The inquiries made during future discovery will determine that issue. The trial judge wisely decided to prevent the plaintiff from contacting blood donors or conducting further discovery until further order of the court. Obviously, the trial court intends to conduct discovery in the least obtrusive manner possible.

SOCIETAL INTERESTS

The Hospital District also contends that disclosure of the identity of blood donors would harm societal and institutional interests in maintaining a healthy and effective blood donation program. The Hospital District alleges that the public disclosure of blood donor identities would inhibit blood donations in the future. Specifically, the Hospital District argues that society's interest in maintaining an effective blood donation program clearly overrides any interest of the plaintiff in the disclosure of the identities of the blood donor. On the other hand, the plaintiff claims there is no other way for her to prove the allegations of her lawsuit.

At the outset, the Hospital District produced no evidence that the blood provided plaintiff's decedent was provided by blood donors rather than sellers.[6] Additionally,

the Hospital District produced no evidence regarding the difficulty that local blood banks are encountering in encouraging volunteer donations of blood.[7] No evidence was presented which would tend to demonstrate that the disclosure of the donors' names would be counterproductive to the blood bank program.

Nonetheless, the Hospital District relies on the authority cited in *Rasmussen v. South Florida Blood Serv.*, 500 So.2d 533 (Fla.1987). The facts of that case are discussed in the majority opinion. The court in *Rasmussen* was faced with a similar situation.[8] In *Rasmussen*, the South Florida Blood Service moved to quash a subpoena and moved for protective order when its records reflecting the identity and location of blood donors were subpoenaed. When the trial court ruled against the blood service, it sought a writ of certiorari to the appellate court which in turn certified the question to the Florida Supreme Court.[9] In *Rasmussen*, the Florida court concluded that, "society's interest in a strong and healthy blood supply will be furthered by the denial of discovery in this case." *Id.* at 538.

The volunteer blood donation system is crucial to the maintenance of the life and health of the individual members of society. As a result, it is not in the public interest to discourage blood donations by members of the public. The public disclosure of the identity of donors in order to discover if they are infected with the AIDS virus might well discourage donors.

However, we must also protect the plaintiff's right to information necessary to prove her cause of action. In some instances, it is not possible to resolve the conflict

---

**6.** A voluntary blood donation system is encouraged by the United States Government. *See National Blood Policy*, 39 FED.REG. 32701 (Sept. 10, 1974). Voluntary blood donation is highly favored over the selling of blood for the obvious reasons that blood donors are less likely to be contaminated with infectious diseases than those unfortunate individuals forced to sell their blood for subsistence. *Id.*

**7.** However, there is no doubt that local blood banks have had difficulty in obtaining blood from volunteers.

**8.** The *Rasmussen* court was evidently presented more evidence regarding the effect of the disclosure of the identity of donors. *South Florida Blood Serv. v. Rasmussen*, 467 So.2d 798, 803–04 (Fla.App.—3d Dist.1985), *aff'd*, 500 So.2d 533 (Fla.1987). (Court of Appeals opinion).

**9.** Florida certiorari practice is similar to mandamus practice in Texas. *Rasmussen*, 467 So.2d at 804. (Court of Appeals opinion.)

between these two competing interests. In those cases, the courts must apply balancing tests to determine whether society's interest outweighs those of a litigant.

However, in this case, it is possible to balance those interests without doing substantial damage to either. The trial court resolved the conflict by allowing discovery, but, denying the plaintiff an opportunity to contact the donors without a further order of the court, stating:

> Defendant shall not directly or indirectly contact any "donor" identified through records produced under this order nor undertake further discovery regarding such "donors" until permitted to do so by further order of this court.

It is obviously the trial court's intention to closely monitor the discovery process to avoid undue publicity and intrusion into the donors' private lives. However, the trial court's order stops one step short of accomplishing the task. The trial court should have further insulated the donors by preventing any party to the litigation from disclosing the donors' names or locations, either directly or indirectly.

The problem with the current order is demonstrated in the *Rasmussen* case. The Florida Supreme Court noted that an order could be designed to both grant discovery and protect donors, stating:

> Some method could be formulated to verify the Blood Service's report that none of the donors is a known AIDS victim while preserving the confidentiality of the donors' identities. However, the subpoena in question gives petitioner access to the names and addresses of the blood donors with no restrictions on their use. There is nothing to prohibit petitioner from conducting an investigation without the knowledge of the persons in question. We cannot ignore, therefore, the consequences of disclosure to nonparties, including the possibility that a donor's co-workers, friends, employers, and others may be queried as to the donor's

sexual preferences, drug use, or general life-style.

*Rasmussen*, 500 So.2d at 537.

In the instant case, the trial court's order does not prevent any party from disclosing the identity of the donors to third parties, including potential witnesses and the news media. I realize this was not the intention of the trial court, and that this court has had the opportunity to review the trial court's decision, made in the heat of a trial schedule, with a relaxed 20/20 hindsight. Additionally, the plaintiff has indicated her understanding of the potential problem.

In her reply to the writ of mandamus, plaintiff has suggested that the list of donors be sealed in the court's record, not be dissiminated to the public, be made available only to the parties in the case, and be destroyed on the final disposition of the case. As mentioned in Justice Lattimore's concurring opinion, the threat of disclosure is not great. However, I cannot agree with his conclusion. While the threat may not be great, the potential harm of disclosure is great. If the names of the donors are disclosed, it will be too late for the court to act to protect society's interest.

I would grant the writ of mandamus only to the extent of directing the trial court to modify its order to prevent disclosure of the names of the donors, either directly or indirectly to any third person.

FENDER, C.J., and HILL, J., join.

## ON MOTION FOR REHEARING

FARRIS, Justice.

After our original opinions were handed down in this case, Judge Hughes entered a supplemental order relating to the discovery of the identities of blood donors which reaffirmed the restrictions included in the October 16, 1986 order and placed further restrictions on the parties and their attorneys preventing them from disclosing the identities of the donors or contacting the donors without further order of the court.[1] The supplemental order expresses

---

1. The specific restrictions added by the supplemental order are as follows:

No one, including but not limited to Counsel and the parties, connected with this litigation shall directly nor indirectly divulge or allow

an intent to "allay the fears" contained in the dissenting opinion. In argument on relator's motion for rehearing, before the court sitting en banc, counsel for relator has expressed relator's continued objection to any discovery of the identities of blood donors despite the additional restrictions placed upon discovery by the trial court. In argument, the attorney for relator has acknowledged that Judge Hughes has not denied relator any requested restrictions on the use or dissemination of the discovered blood donors' identities, and that relator would continue its objection to the discovery regardless of any restrictions which the court might impose.

Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law, and we would act in excess of our writ power if we granted mandamus relief absent these circumstances. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985).

■ Relator seeks to have us issue our writ compelling the trial court to withdraw its discovery order. The scope of discovery largely rests within the discretion of the trial court. *Jordan v. Ct. of App. for Fourth Sup. Jud. Dist.,* 701 S.W.2d 644, 648–49 (Tex.1985). The supplemented order of the court so restricts the discovery of the blood donors' identities as to preclude any risk of disclosure of the identities of the blood donors to third persons. The orders of the trial court with regard to the challenged discovery reflect a well reasoned use of the discretion reserved to trial courts on matters of this sort. The relator's motion for rehearing is overruled.

to be divulged the identity of any "donors", any information about such "donors", or any information regarding such "donors" without specific leave and order of this Court.

All information concerning such "donors" shall be kept in a secure place and shall be made available for destruction under the supervision of this Court at the conclusion of this litigation or at such other time as the Court may order.

On or before May 8, 1987, each party desiring to do so will submit to the Court in letter form a plan for the future discovery of information relating to such "donors" beyond that now ordered. Such plan should include details for contacting such "donors", discovery directed to such "donors" and/or "testing" of such donors if contact, direct discovery and/or testing is anticipated.