**GULF COAST REGIONAL BLOOD
CENTER, Relator,**
v.
**Honorable Sam HOUSTON, Respondent.**
No. 2–87–233–CV.
Court of Appeals of Texas,
Fort Worth.
Feb. 11, 1988.

Touchstone, Bernays, Johnston, Beall & Smith, Richard Bernays and Richard T. Cheatham, Dallas, Vinson & Elkins, Barbara A. Radnofsky and Brenda Strama, Houston, for relator.

Shank, Irwin, Conant, Lipshy & Casterline, Gregory N. Woods and A.W. Arnold III, Dallas, for real parties in interest.

Before FENDER, C.J., and HILL and KELTNER, JJ.

## OPINION

FENDER, Chief Justice.

Relator, Gulf Coast Regional Blood Center, seeks the issuance of a writ of mandamus to compel the Hon. Sam Houston of the 211th District Court of Denton County, Texas, to rescind his order of October 23, 1987. The order was entered in cause number 86–2728–C, styled Patty Jo Baker, individually and as representative of the estate of George W. Baker, Ellis Lee Baker and Georgia Ellen Baker Slough versus David H. Ammons, M.D., P.A., Lewisville Memorial Hospital, Inc., J.K. and Susie L. Wadley Research Institutes and Blood Bank d/b/a The Blood Center at Wadley and Gulf Coast Regional Blood Center. The order compels relator as defendant to produce and make available to plaintiff certain documents identifying blood donors.

We grant relator's motion for leave to file the petition, but we deny the relief requested herein.

The cause of action giving rise to relator's motion is a suit brought under the Texas wrongful death and survival statutes by plaintiff, individually and on behalf of the estate of plaintiff's deceased husband

against relator. "Plaintiffs' First Amended Petition" alleges a negligence cause of action, a strict liability cause of action and violation of the Texas Deceptive Trade Practices Act against relator for its role in procuring, testing, representing, supplying, selling and/or failing to warn in regard to the blood transfused into the deceased which resulted in the deceased contracting Acquired Immune Deficiency Syndrome (AIDS) and subsequently dying.

Plaintiff served relator with Interrogatories, Requests for Production of Documents and Requests for Admissions. Relator refused to produce certain documents and refused to answer several interrogatories and requests for admissions on the ground that the information was privileged under an alleged donor constitutional right to privacy. After a hearing on plaintiff's motion to compel, the respondent ordered the relator to disclose:

(1) the names and addresses of any donor of blood to the decedent that is known by relator to have AIDS;

(2) the names and addresses of any donor of blood to the decedent whose AIDS status is unknown or is not available to relator;

(3) any other information from any individual or entity that relator believes knows the AIDS status of any of the donors donating blood to the decedent; and

(4) to plaintiff's attorney, by number, the test results and all documents pertaining to those donors who tested negative for AIDS, but relator need not give identifying information on any of these donors.

The respondent further mandated that the above information and documents be submitted to the court for in camera review before disclosure to plaintiff's attorney. Respondent also invoked an extensive protective order and strong restrictions on the use and availability of donor information.

In its petition for writ of mandamus, relator first contends that the order is contrary to public interest which requires blood donor confidentiality for the protection of the voluntary blood supply, and that the donors' constitutional right of privacy outweighs the plaintiff's right to discover the donors' identity. Relator's contentions have been previously addressed by this court in *Tarrant County Hosp. Dist. v. Hughes*, 734 S.W.2d 675 (Tex.App.—Fort Worth 1987, no writ). The facts in *Hughes* are uniquely similar to the facts of the instant case and warrant a discussion thereof.

From the onset we note that by the luck of the draw the panel in the present case is composed of the three judges who dissented when the court sat en banc in the *Hughes* case. In effect, we will adhere to the majority opinion, and this panel will not and cannot herein undertake to overrule the *Hughes* opinion. We further emphasize that in the *Hughes* opinion on motion for rehearing, and after additional restrictions were placed upon discovery by the trial court, this court unanimously denied relator's motion for rehearing.

In *Hughes*, a hospital sought issuance of a writ of mandamus to compel a judge to rescind a discovery order. *Id.* at 676. The order was entered in an underlying wrongful death action requiring the hospital to produce and make available documents identifying donors of blood transfused to a patient who developed Acquired Immune Deficiency Syndrome. *Id.* After this court entered an extensive discussion of *Rasmussen v. South Florida Blood Serv.*, 500 So.2d 533 (Fla.1987), disagreeing with the Florida court's holding, we concluded that "[n]either the Federal Constitution nor our State Constitution expressly mentions any right of privacy." *Hughes*, 734 S.W.2d at 678.[1] We went on to discuss the development of the "right of privacy" through judicial interpretation. We then held in *Hughes* that the trial court order compelling relator to identify blood donors is not an impermissible violation of their right to privacy. *Id.* at 679. We see no

---

1. Both in *Hughes* and in the present case the relator cites *Rasmussen* in support of its contention that the discovery order violates the donors' right to privacy and adversely affects the interest of society in maintaining a healthy and effective blood donor program.

distinguishing factors which would compel us to hold otherwise in the present case.

▆ We further hold that relator has not established a societal interest that is paramount to the plaintiff's right to discovery of the blood donors' identity. The scope of discovery rests largely within the discretion of the trial court. *Jordan v. Ct. of App. for Fourth Sup. Jud. Dist.*, 701 S.W. 2d 644, 648–49 (Tex.1985). A party opposing discovery bears the burden of establishing a discovery privilege. *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex.1986) (per curiam).

The plaintiff possesses a legitimate interest in the identity of the blood donors. Plaintiff asserts that the donors were persons with knowledge of relevant facts, and without such information plaintiff would have difficulties in prosecuting her cause of action against relator.

On the other hand, the affidavit of Dr. David Houston Yawn, M.D. and the testimony of Bill Teague, the president of Gulf Coast Regional Blood Center, indicate it is their opinion that if donor identities were not held strictly confidential, the volunteer blood system could be destroyed. However, we find that the trial court effectively balanced the interest of both parties by permitting the discovery requested but affording the donors protection from undue publicity and intrusion into their private lives. The trial court ordered the following restrictions:

1. The names and locations of the donors and test results on their blood shall be sealed with the Court and a number shall be assigned to each donor for reference during discovery unless otherwise ordered by the Court.

2. Documents containing identities of the donors shall be filed with the Court and sealed. Only parties' counsel will have access to these sealed documents.

3. The list of names of the donors shall be destroyed at the final disposition of the case, unless otherwise ordered by this Court.

4. Only the counsel of parties to this suit will have access to the names and locations of the above donors and blood test results. Plaintiffs are prohibited from disclosing the donors names or locations, either directly or indirectly, to third parties, without further order of this Court.

5. No party, their agents or representatives, shall directly or indirectly contact any "donor" identified through records produced under this Order nor undertake further discovery regarding such "donors" until permitted to do so by further order of this Court.

These orders are sufficient in restricting the discovery of the blood donors' identity to preclude any risk of disclosure of the identities of the blood donors to the public.[2] *See Hughes*, 734 S.W.2d at 685 (opinion on reh'g).

▆ Relator next contends that Texas statutes evidence the legislature's intent to protect the identities of persons who give health information. Relator relies on TEX. REV.CIV.STAT.ANN. art. 4419b–1, sec. 9.03 (Vernon Supp.1988) which specifically deals with confidentiality and disclosure of AIDS test results. We recognize relator cites this Act to illustrate the intent of the legislature to protect the confidentiality of persons giving health information; however, we do not interpret the Act itself to apply to court action. The Act is merely a general health regulation and states guidelines for conducting AIDS test. This is evident by the fact that the legislature during the same session enacted TEX.REV. CIV.STAT.ANN. art. 4419b–1.5, sec. 3 (Vernon Supp.1988) which outlines the limits of court actions on blood banks. Although the Blood Bank Act might be useful in determining the discovery rights in fu-

2. In effect, those restrictions on discovery in the present case substantially comply with the suggested restriction made by Judge Keltner, dissenting, in the *Hughes* opinion. Additionally, these restrictions contained in the dissenting opinion were entered by Judge Hughes as a supplemental order relating to the discovery of the identities of blood donors. On relator's motion for rehearing with the added restriction, this court sitting en banc unanimously denied the motion.

ture cases, it is inapplicable to the present conflict. The Act was effective August 31, 1987 and section 7 provides that "[t]his Act shall be applied prospectively only. Nothing in this Act affects either procedurally or substantively a case that was filed in the courts of this state before the effective date of this Act." TEX.REV.CIV.STAT. ANN. art. 4419b–1.5 note, Acts 1987, ch. 1093, sec. 7 (Vernon Supp.1988). Plaintiff's first amended petition was filed January 14, 1987, over seven months prior to the effective date of the Act.

■ Relator also cites TEX.REV.CIV. STAT.ANN. art. 4447d, secs. 2, 3 (Vernon 1976 and Supp.1988) to support its contention of legislative intent, and to assert a privilege. Article 4447d, sections 2, 3 limits the disclosure of medical research and studies conducted by certain medical committees and organizations.[3] Relator claims a "hospital committee privilege" within the purview of this statute. But relator has failed to establish that such a hospital committee regarding AIDS existed. In fact, Teague, the president of Gulf Coast Regional Blood Center, testified that the center had formed no committee "specifically for addressing the issue of AIDS screening or the testing of blood for the AIDS virus."

In summary, regardless of what interpretation relator may give to the Texas Legislature's intent, we are bound by the law applicable to this case at the time of its filing. At such a time the law did not provide for the confidentiality of donors' records.

■ Relator's final argument is that the donors' due process rights protect their identities from disclosure. Relator's due process argument must fail for much of the same reasons discussed under relator's right to privacy argument. There is no doubt that AIDS in our society carries a hideous stigma which has resulted in hostility towards AIDS victims. However, the court's restriction placed upon the discovery order acts to closely monitor the discovery process and strongly prohibits any disclosure of the "donors names or locations, either directly or indirectly, to third parties...." As a result, there will be no *public* identification of a donor as an AIDS carrier, which would require the procedural due process standards of notice and an opportunity to be heard.

For the reasons stated, we deny the relator's prayer for relief.

KELTNER, J., concurs.

KELTNER, Justice, concurring.

I concur with the result reached by the majority but disagree with part of the rationale behind the opinion.

As the majority notes, the facts in this case are surprisingly similar to the facts of

3. Article 4447d, sections 2, 3 provide in relevant part:

> Sec. 2. The State Department of Health, medical organizations, hospitals and hospital committees shall use or publish said material only for the purpose of advancing medical research or medical education in the interest of reducing morbidity or mortality, except that a summary of such studies may be released by any such group for general publication. The identity of any person whose condition or treatment has been studied shall be confidential and shall not be revealed under any circumstances except in the case of immunization surveys conducted under the auspices of the State Department of Health for the purpose of identifying persons who may be in need of immunization....
>
> Sec. 3. The records and proceedings of any committee or joint committee of a hospital, medical organization, university medical school, university health science center, health maintenance organization licensed under the Texas Health Maintenance Organization Act (Article 20A.01 et seq., Vernon's Texas Insurance Code), including without limitation an independent practice association or other physician association whose committee or joint committee is a condition of contract with such health maintenance organization, or extended care facility, whether appointed on an ad hoc basis to conduct a specific investigation or established under state or federal law or regulations or under the by-laws, rules or regulations of such organization or institution, shall be confidential and shall be used by such committee and the members thereof only in the exercise of the proper functions of the committee and shall not be public records and shall not be available for court subpoena; provided, however, that nothing herein shall apply to records made or maintained in the regular course of business by a hospital, health maintenance organization, or extended care facility.

a previous case decided by this court. *Tarrant County Hosp. Dist. v. Hughes*, 734 S.W.2d 675 (Tex.App.—Fort Worth 1987, no writ). In this case, the plaintiff served Gulf Coast Regional Blood Center with interrogatories, requests for production of documents and requests for admissions, which among other things, sought the names and addresses of blood donors to the decedent that were known by the relator to have been infected by the AIDS virus. Second, the plaintiff requested names and addresses of any blood donor to the decedent whose AIDS status is unknown or not available. Third, the plaintiff requested information regarding other blood donors to the decedent, not known to be infected with the AIDS virus.

Contrary to the majority's opinion, the relator did not refuse to answer the discovery request, but merely filed an objection to the various discovery requests claiming that the information was guarded from discovery by privilege because disclosure would violate the donors' constitutional right to privacy. Additionally, the relator objected to the request on the social-policy grounds that if the donors' identities are revealed, there would be an adverse effect on the voluntary blood supply, which is crucial to the health of our country.

The trial court conducted a hearing at which the relator presented evidence that if donor identities are not held strictly confidential, the voluntary blood system would suffer. Relator's witness testified that the destruction of the voluntary blood system would lead to critical shortages in the blood supply which would materially effect the health of the nation. After the hearing and arguments of counsel, the trial court entered an order which required the relator to disclose the identity and location of donors of blood to the deceased that are known by the relator to have AIDS, or whose AIDS status is unknown or unavailable to Gulf Coast. Additionally, the trial court ordered that the relator produce information from any individual or entity known by it to "[know] the AIDS status of any of the donors donating blood to the decedent. . . ."

The trial court refused to allow discovery into any information on donors who tested negative for the AIDS virus. Instead, the relator was required to supply, by identifying numbers, the test results and documents relating to those donors who tested negative. The court further ordered that these information documents be submitted to the court for an in-camera review before disclosure to the plaintiff's lawyers.

In making the order, the trial court made it clear that it considered the blood donors to be persons with knowledge of relevant facts. Rule 166b(3) provides that the identity and location of persons with knowledge of relevant facts are not privileged under any of the privileges listed in rule 166b(3)(a-e).

In addition to allowing the discovery, the trial court invoked an extensive protective order which provides:

1. The names and locations of the donors and test results on their blood shall be sealed with the Court and a number shall be assigned to each donor for reference during discovery unless otherwise ordered by the Court.

2. Documents containing identities of the donors shall be filed with the Court and sealed. Only parties' counsel will have access to these sealed documents.

3. The list of names of the donors shall be destroyed at the final disposition of the case, unless otherwise ordered by this Court.

4. Only the counsel of parties to this suit will have access to the names and locations of the above donors and blood test results. Plaintiffs are prohibited from disclosing the donors names or locations, either directly or indirectly, to third parties, without further order of this Court.

5. No party, their agents or representatives, shall directly or indirectly contact any "donor" identified through records produced under this Order nor undertake further discovery regarding such "donors" until permitted to do so by further order of this Court.

The relator's primary contention is that the disclosure of the identity and location

of the blood donors violates their constitutional right to privacy. The majority states that this court has concluded "[n]either the Federal Constitution nor our State Constitution expressly mentions any right of privacy." *Tarrant County Hosp. Dist. v. Hughes,* 734 S.W.2d at 678. I disagree.

While neither the U.S. Constitution nor the Texas Constitution expressly mentions the right to privacy, it has been recognized as a necessary element of individual freedom. *Whalen v. Roe,* 429 U.S. 589, 598–600, 97 S.Ct. 869, 875–77, 51 L.Ed.2d 64, 72–74 (1977). However, in a complex society, total right to privacy is unfeasible, particularly where disclosure of information is concerned. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

Nearly all legal scholars agree that the right to privacy is inherent in our constitution. However, substantial disagreement exists regarding the extent of the right. In the instant case, the blood donors have been protected by the court's protective order. As a result, we cannot say that the trial court's actions to date have impermissibly invaded the blood donor's right to privacy.

I agree with the remaining portion of the majority's opinion dealing with the relator's claims regarding societal interest in public policy. In these matters, we must weigh the plaintiff's right to the truth through discovery with society's interest in a healthy blood supply. This case is presented to us in the form of a petition for writ of mandamus. Our power to review the trial court's decision under this procedure is substantially restricted. We can only grant a writ of mandamus if we determine that the trial court has abused its discretion. *Jampole v. Touchy,* 673 S.W.2d 569, 572 (Tex.1984).

As a result, we cannot anticipate the future discovery in this case nor anticipate any future orders of the trial court. Instead, we must restrict ourselves to the record before us and address only those matters that have been ruled on by the trial court.

I concur with the majority's holding that the trial court did not abuse its discretion

in authorizing limited discovery into the location and identity of blood donors to the decedent.