NO.
12-05-00167-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

IN RE: CRESTCARE NURSING AND      §                      

REHABILITATION CENTER,
IN ITS

ASSUMED OR COMMON NAME;

CRESTCARE NURSING AND       §                      ORIGINAL PROCEEDING

REHABILITATION CENTER,
LLC;

HAVEN CARE MANAGEMENT

SERVICES, LLC       §                      

                                                                                        
                                                                   

OPINION

            This is an
original mandamus proceeding.  Crestcare
Nursing and Rehabilitation Center, in its Assumed or Common Name, Crestcare
Nursing and Rehabilitation Center LLC, and Haven Care Management Services LLC
(collectively “Crestcare”) challenge a portion of a discovery order signed by
Respondent, the Honorable David Brabham, Judge of the 188th Judicial District
Court, Gregg County, Texas, on May 12, 2005. 
Crestcare contends that Respondent abused his discretion by ordering
Crestcare to produce certain personnel files without first conducting an in
camera review of the files.  We deny the
petition.

 

Background

            Willa
Clements, the real party in interest, filed the underlying suit alleging, in
part, that Sheila Williams suffered serious bodily injuries while she resided
at Crestcare Nursing and Rehabilitation Center (the “nursing home”).  Clements further alleged that Williams’s
injuries were proximately caused by Crestcare’s negligence.[1]  Clements served Crestcare with requests for
production, including the following that are the subject of the controversy
here:

 








•                     
RFP 6.0 requesting personnel files for all nursing personnel,
administrators, directors of nursing, and departmental heads who worked at the
nursing home at any time from September 5, 2000 through September 9, 2003 that
were created in the normal course of business and constitute business records
as defined in Texas Rule of Evidence 803(6). 
If Williams resided on a particular wing, hall, or distinct unit, the
request for nursing personnel files was limited to the files of direct care
givers, including any pool or relief personnel, who worked on that particular
wing or unit at any time during the specified time frame.  The RFP also includes a list of
representative documents included within the meaning of “personnel files.”

 

•                     
RFP 6.01 requesting job performance evaluations not produced
under another RFP for all nursing personnel who worked at any time on any wing
or unit where Williams resided during the time of her residency and all
documentation evaluating the job performance of the director of nursing and the
administrator during the time period specified.[2]

 

•                     
RFP 6.02 requesting the complete personnel file for each
employee of the nursing home that Crestcare identified or designated as a
person having knowledge of relevant facts in the lawsuit.

 

•                    
RFP
6.1 requesting the
complete personnel file for all nursing personnel, administrators, or directors
of nursing who worked at the nursing home at any time during September 5, 2000
through September 9, 2003.

 

Crestcare filed objections and
asserted various privileges and exemptions from discovery, including “the Texas
and United States Constitutions regarding rights to privacy. ”  At Clements’s request, Crestcare provided a
privilege log in which it asserted, in part, that the personnel files were
protected from discovery by “employee and personal privacy.” Clements filed a
motion to compel production, and Respondent conducted a hearing on the motion.[3]

 

The Hearing

            At
the hearing, Crestcare stated that it would “stand by each objection and each
assertion of privilege” in its responses to the requests for production of the
personnel files.  In support of its
privacy claim, Crestcare presented the affidavit of Paul Friesen, the current
administrator at the nursing home.  In
his affidavit, Friesen generally described the types of information contained
in the personnel files.  He also stated
that (1) personnel files are created with the employee’s right to privacy in
mind, (2) the records in the files are disclosed only to the individual
employee and are never made available to the general public, and (3) the files
are intended to remain privileged and confidential.  Crestcare also tendered several boxes of
personnel files for in camera review.[4]

            Crestcare
acknowledged that during a break in the hearing, Clements had agreed to certain
date and wing or unit limitations on her requests for the personnel files.  However, Crestcare again asserted that its
employees’ constitutional right to privacy prohibited production of the
files.  Respondent then granted Clements’s
motion to compel as to RFP 6.0, subject to the agreed limitations.  After Respondent announced his ruling,
Crestcare argued that “every file of every employee is privileged” and that
Respondent was under a duty to conduct an in camera inspection of the tendered
files.  Clements urged that Respondent
was under no duty to conduct an in camera inspection absent the identification
of specific documents that Crestcare contended were privileged.              Respondent
offered Crestcare an opportunity to submit for in camera review what it
considered to be representative documents supporting its privacy claim.  Respondent further informed Crestcare that he
would not review in camera any documents unless Crestcare provided specific
documents “as opposed to just en masse saying that all documents in personnel
files are privileged. . . .”  Crestcare
declined, reasserting that “the personnel files that we have tendered to the
Court for an in camera inspection, and every document in those, are privileged
and . . . in particular by the Constitutional right of privacy. . . .”  Respondent then ordered production of the
files and documents identified in RFP numbers 6.01, 6.02, and 6.1.[5]  This original proceeding followed.  On Crestcare’s motion, we stayed the trial
court proceedings pending our disposition of its petition.

 

Availability of Mandamus

            Mandamus
will issue to correct a discovery order when the mandamus record establishes
that the order constitutes a clear abuse of discretion and there is no adequate
remedy by appeal.  In re Colonial
Pipeline Co., 968 S.W.2d 938, 941 (Tex. 1998).  A trial court abuses its discretion when it
acts in an unreasonable or arbitrary manner or, stated differently, when it
acts without reference to guiding rules and principles.  Id.  Mandamus is appropriate to protect
confidential documents from discovery.  In
re Living Centers of Texas, Inc., 175 S.W.3d 253, 256 (Tex. 2005).  Mandamus is also available when a trial court
fails to conduct an in camera inspection of documents if such review is
critical to its evaluation of a privilege claim.  In re E.I. DuPont de Nemours & Co.,
136 S.W.3d 218, 223 (Tex. 2004) (per curiam). 
The party seeking the writ of mandamus has the burden of showing that
the trial court abused its discretion.  In
re E. Tex. Med. Ctr. Athens, 154 S.W.3d 933, 935 (Tex. App.–Tyler 2005,
orig. proceeding).

 

Constitutional Right to Privacy

            A
court order that compels or restricts pretrial discovery constitutes state
action, which is subject to constitutional limitations.  Tarrant County Hosp. Dist. v. Hughes,
734 S.W.2d 675, 679 n.3 (Tex. App.–Fort Worth 1987, orig. proceeding) (citing Seattle
Times Co. v. Rhinehart, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17
(1984)).  Federal and state constitutions
are sources of privacy interests that must be scrutinized when raised as a
challenge to pretrial discovery.  Tarrant
County Hosp. Dist., 734 S.W.2d at 678. 


            The
right to privacy is not expressly mentioned in either the federal constitution
or our state constitution.  However, the
Supreme Court has held that a right of personal privacy, or a guarantee of
certain areas or zones of privacy, exists under the United States
Constitution.  See, e.g., Griswold
v. Connecticut, 381 U.S. 479, 484, 85 S. Ct. 1678, 1681, 14 L. Ed. 2d
510 (1965).  Similarly, the Texas Supreme
Court has held that the Texas Constitution protects personal privacy from
unreasonable intrusion.  Tex. State
Employees Union v. Tex. Dep’t of Mental Health & Mental Retardation,
746 S.W.2d 203, 205 (Tex. 1987).  The
term “right to privacy” is a generic term encompassing various rights
recognized in decisions of the United States Supreme Court as well as in other
federal and state courts.  Tarrant
County Hosp. Dist., 734 S.W.2d at 679. 
Marital relations, procreation, contraception, family relationships, and
child rearing and education are among the interests that have been afforded
constitutional protection.  Id.  An individual’s medical records are within a
zone of privacy protected by the United States Constitution.  Whalen v. Roe, 429 U.S. 589,
601, 97 S. Ct. 869, 877, 51 L. Ed. 2d 64 (1977).

            The
cases protecting privacy have involved at least two different kinds of
interests.  Whalen,  429 U.S. at 599, 97 S. Ct. at
876.  One is the individual interest in
independence when making certain kinds of important decisions, and another is
the interest in avoiding disclosure of personal matters.  Id.  It is the second aspect of the right to
privacy that concerns us here.  This “disclosural
privacy” encompasses the ability of individuals to determine for themselves
when, how, and to what extent information about them is communicated to
others.  Indus. Found. of the S. v.
Tex. Indus. Accident Bd., 540 S.W.2d 668, 679 (Tex. 1976).  This does not mean that every publication of
personal information about an individual constitutes an invasion of a
constitutionally protected zone of privacy. 
Id. at 680.  Nor
does it mean that information within a constitutionally protected zone of
privacy can never be disclosed.  See,
e.g., Whalen, 429 U.S. at 604, 97 S.Ct. at 878 (upholding state
statute requiring reporting of names and addresses of all persons obtaining
prescriptions for certain drugs having both a lawful and an unlawful market);
Tarrant County Hosp. Dist., 734 S.W.2d at 680 (holding that
compelling disclosure of blood donors’ identities was not an impermissible
violation of constitutional right to privacy).

 

Limiting Discovery








            The
party who seeks to limit discovery by asserting a privilege has the burden of
producing evidence to support its assertions. 
In re DuPont, 136 S.W.3d at 223; see also Tex. R. Civ. P.  193.4(a). 
This rule applies when a party asserts privacy rights as a ground for
limiting discovery.  Kessell v.
Bridewell, 872 S.W.2d 837, 841 (Tex. App.–Waco 1994, orig.
proceeding).  Merely listing a specific
privilege or exemption from discovery in a privilege log is insufficient.  In re Monsanto Co., 998 S.W.2d
917, 926 (Tex. App.–Waco, 1999, orig. proceeding).  If a party makes a prima facie showing of a
privilege or an exemption from discovery and tenders documents to the trial
court, the trial court must conduct an in camera inspection if the review is
critical to the evaluation of the claimed privilege or exemption.  In re DuPont, 136 S.W.2d at
223.  The prima facie standard requires
only the “minimum quantum of evidence necessary to support a rational inference
that the allegation of fact is true.” Id. (citing Tex.
Tech. Univ. Health Sciences Ctr. v. Apodaca, 876 S.W.2d 402, 407 (Tex.
App.–El Paso 1994, writ denied)). 

            Crestcare
suggests that the trial court must always conduct an in camera inspection when
the party resisting discovery asserts a privacy right.  According to Crestcare, the inspection is
required because a person’s privacy interest in the requested information must
be weighed against the relevancy of such information as a matter of course
before ordering the information produced. 
As support for its argument, Crestcare cites Crane v. Tunks,
160 Tex. 182, 328 S.W.2d 434 (1959),  Maresca
v. Marks, 362 S.W.2d 299 (Tex. 1962), and Tilton v. Marshall,
925 S.W.2d 672 (Tex. 1996).  Crane and
Maresca hold that income tax returns are not wholly privileged
documents, but are subject to discovery to the extent that portions of the
returns are relevant and material to the issues in the case.  These cases require the trial court to
personally examine the income tax returns, before ordering production, to
determine which portions are relevant and material.  Maresca, 362 S.W.2d at 300; Crane,
328 S.W.2d at 440.  Tilton
holds that the same rule applies to tithing records, which in many cases may be
a subset of personal tax records.  Tilton,
925 S.W.2d at 683.

            Crestcare
admitted at oral argument that it found no cases applying this rule to other
types of personal information.  Neither
Crestcare’s privilege log nor Friesen’s affidavit makes any reference to income
tax records.  Therefore, the rule
Crestcare cites is inapplicable here.  

 

Crestcare’s Burden

            Information
contained in personnel files might, under some circumstances, be included
within a protected zone of privacy.  See
Kessell, 872 S.W.2d at 841-42. 
A party asserting that privacy rights protect personnel files from
disclosure must present evidence showing “a particular, articulated and
demonstrable injury.”  See id.  (quoting Garcia v. Peeples, 734
S.W.2d 343, 345 (Tex. 1987)).  In other
words, the party must establish that it has such a privacy interest in the
information contained in the files as to bar disclosure.  Kessell, 872 S.W.2d at
842.  Affidavits presented as evidence
must set forth factual allegations showing that the information sought is protected
by the claimed privacy interest.  In
re DuPont, 136 S.W.2d at 224. 
Mere conclusory allegations that documents sought are “confidential” are
insufficient to support a privacy claim. 
See Kessell, 872 S.W.2d at 841-42; see also In re
DuPont, 136 S.W.3d at 224 (affidavit merely presenting global
allegations that documents come within the asserted privilege has no probative
value).  

            Here,
Paul Friesen, the nursing home administrator, stated in his affidavit that (1)
personnel files are created with the individual employee’s right to privacy in
mind, (2) the records in the files are disclosed only to the individual
employee and are never made available to the general public, and (3) the files
are intended to remain privileged and confidential.  These statements are merely conclusory
allegations that the records are “confidential.” See Kessell, 871
S.W.2d at 841-42.  As such, the
statements have no probative value and do not constitute a prima facie showing
that the personnel files are within a constitutionally protected zone of
privacy.  See In re DuPont,
136 S.W.3d at 224; Kessell, 871 S.W.2d at 841-42.  Friesen also generally describes the
information contained in the personnel files. However, Friesen’s description
does not include facts that suggest any of the described information is within
a constitutionally protected zone of privacy. 
Therefore, the description does not aid Crestcare.[6]

            Friesen’s
affidavit does not provide “a minimum quantum of evidence to support a rational
inference” that Crestcare’s employees have such a privacy interest in the
personnel files as to compel nondisclosure. 
Consequently, Respondent did not abuse his discretion in ordering
disclosure of the files without reviewing them in camera.  Nonetheless, Respondent offered Crestcare the
opportunity to present representative documents from the tendered files  for in camera inspection.  In doing so, Respondent “went above and
beyond what was required of him.”  See
In re Monsanto, 998 S.W.2d at 929 (observing that Respondent
viewed documents in camera despite Relator’s failure to make prima facie
showing of privilege).

 

Conclusion

            Respondent
did not abuse his discretion by refusing to conduct an in camera review of the
files.[7]  Accordingly, the petition is denied
and our stay is lifted.

 

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion
delivered February 22, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











[1] Clements
sued in her individual capacity, as representative for all wrongful death
beneficiaries, and as heir at law and representative of the estate of Sheila
Williams, deceased.  





[2]  Crestcare
admits that job performance evaluations are in the personnel files.  Therefore, we refer to the requested
items collectively as the “personnel files.”





[3] 
Clements does not question Crestcare’s standing to assert its
employees’ privacy rights.





[4] Respondent
marked one box of the tendered files as Exhibit P-1 and delivered the box to
this Court in this proceeding.  The box
contains personnel files for 66 employees whose surnames begin with “A” or “B.”





[5] In
its filed objections to each of the RFPs in controversy here,  Crestcare stated that Clements is seeking
information that is not “relevant to the subject matter of the pending
litigation.”  At the hearing, Crestcare
mentioned relevancy, stating that “if [any employees whose files were
requested] didn’t lay hands on this woman, we stand on our relevancy objection.”  Crestcare then  admitted that its relevancy objection “is not
subject—that is not something that we have presented to the Court to [sic] in camera
inspection.”  Further, Crestcare agreed
with Respondent that an assertion of privilege is different from saying that
documents are not relevant or not discoverable for some other reason.





[6] Friesen
states that employee “personal health information” is in the personnel
files.  Although medical records are
within a constitutionally protected zone of privacy, Clements said during the hearing that she does not want
employee medical information.  Thus, no
in camera review of documents including this information was necessary. 





[7] We
express no opinion about whether Respondent would have been required to examine
all tendered files “en masse” if Crestcare had made a prima facie showing and
an in camera review had been necessary to the evaluation of Crestcare’s privacy
claim.