Otto BOUTTE, et al.

v.

**BLOOD SYSTEMS, INC.**

**Civ. A. No. 88–1812.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

June 30, 1989.

Jack P. Showers, Michael F. Thompson, Law Firm of Jack P. Showers, Lafayette, La., for Otto Boutte and Nadia Boutte.

F. Frank Fontenot, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., Carl M. Duhon, Milling, Benson, Woodward, Hillyer, Pierson & Miller, Lafayette, La., for Blood Systems, Inc.

## RULING ON MOTION

PUTNAM, Senior District Judge.

The appeal of the Magistrate's order concerning the identity of the blood donor in this case is DENIED and the ruling of the Magistrate affirmed.

Lafayette, Louisiana, June 30, 1989.

## ORDER

MILDRED E. METHVIN, United States Magistrate.

Defendant, Blood Systems, Inc. (Blood Systems), moves for a protective order pro-hibiting the disclosure of the identity of a blood donor. Plaintiff opposes the motion.

## FACTS

Blood Systems is a non-profit community blood bank. On July 1, 1987, an individual (the subject donor) volunteered to donate blood at the Lafayette offices of Blood Systems. The donor's blood was tested for the presence of the HIV antibody, and the results were negative.

Otto Boutte underwent surgery in July, 1987, and received transfusions of 15 units of blood during the course of his treatment, including a unit of the donor's blood.

On September 3, 1987, the subject donor returned to Blood Systems and donated a second unit of blood which tested positive for the HIV antibody. Blood Systems notified the hospital which had received prior donations and the hospital advised Boutte's physician that he had received the subject donor's blood. Boutte subsequently tested positive for the HIV antibody.

Plaintiffs filed suit against Blood Systems on July 11, 1988, alleging that Blood Systems was negligent in screening its donors and testing donated blood. Plaintiffs sought through interrogatories to learn the subject donor's name, address, and telephone number. Blood Systems objected to the request for discovery, but provided copies of the subject donor's interview questionnaire and the results of the tests performed on the unit of blood received by Boutte.[1] All identifying information, including the donor's name, address, business and home phone numbers, birth dates, social security number, and signature were deleted.

## RELEVANCY

■ A party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Rule 26, F.R.C.P. The information sought must appear "reasonably calculated to lead to the discovery

1. Defendant's Response to Plaintiffs' Motion in Opposition to Defendant's Motion for Protective Order ... (Exhibit 6).

of admissible evidence." *Id.* There is no claim by Blood Systems that the identity of the donor falls under a recognized privilege.

Plaintiffs' complaint presents one basic issue: whether Blood Systems was negligent in screening and testing its blood donors.

Plaintiffs are attempting to discover whether Blood Systems followed its own screening procedures before it accepted blood from the subject donor. Courts have held that information about the donor is relevant to this issue:

> Discovery of the circumstances which resulted in the infected blood being given to [Blood Systems] can be made from only two sources. One source is the [Blood Systems] technician who interviewed the donor and the other is the donor.

*Belle Bonfils Memorial Blood Center v. The District Court in and for the City and County of Denver,* 763 P.2d 1003 (Colo.1988). Dwight Sledge, Executive Director of Blood Systems, submitted an affidavit attesting to the screening and testing procedures employed by Blood Systems:

> AABB member facilities collect blood from volunteer blood donors. Pursuant to federal regulations and the AABB's "Standards for Blood Banks and Transfusion Services," all blood donors must be screened to determine their eligibility to donate. All blood collected is tested. Prospective blood donors must provide a confidential history to trained personnel, specifying whether they have ever had certain diseases, including, among others, hepatitis and AIDS, whether they have ever been deferred as a donor, their history of serious illness and recent hospitalization, and use of self-injected drugs. Blood is collected from the donor through the venipuncture procedure only after the personnel have determined that the donor meets all applicable screening criteria. The blood testing process includes, among other things, testing for ABO type, Rh factor of the blood, syphilis, hepatitis B surface antigen and, beginning in 1985, antibody to the virus associated with AIDS. Donors who test positive under these screening tests are informed and it is suggested that they consult their physician. Throughout the donor screening and blood testing process, blood donors are assured, and, indeed, expect that their history information and blood test results will be maintained as confidential. Statements to this effect often appear on the medical history card which donors sign. AABB member facilities have been urged to preserve the confidentiality of blood donors' medical records, and have done so rigorously. Although persons with repeatedly positive tests for antibodies to the AIDS virus are placed on the confidential donor deferral directory, AABB members do not release their identities without written consent, unless necessary to comply with official requirements of government health agencies.

Sledge Affidavit (Defendant's Exhibit B).

George Paul Lombardo, the Blood Systems technician who screened the subject donor, testified during his deposition as to the general procedures he followed at the time in question. Each potential donor was given one information sheet describing the donor process, the interview, and the phlebotomy experience, and a second information sheet describing persons at risk for AIDS.[2] The donor was then required to answer numerous yes-no questions, including whether he had had sexual contact with an AIDS patient or with individuals who had increased risk of contracting AIDS. Lombardo cannot specifically recall the subject donor and knows nothing about him. He has no independent recollection of interviewing the subject donor.[3] He could only assert that he followed the identical procedure with each potential blood donor.

The subject donor's interview indicates that he answered all questions relating to

**2.** See page 39 of Lombardo's deposition (attached as Exhibit 6 to Defendant's Response to Plaintiffs' Motion in Opposition to Defendant's Motion for Protective Order).

**3.** *Id.* at 40.

exposure to the HIV antibody negatively. Blood Systems argues that Lombardo's testimony and the subject donor's completed questionnaire provide plaintiffs with sufficient information to pursue their claims.

Plaintiffs argue that they are entitled to question the subject donor concerning the following:

1) Did Blood Systems ask him the questions contained in the questionnaire prior to accepting his donation of blood?;

2) Did the donor actually receive the two information sheets given prior to the questionnaire?;

3) Did Blood Systems check him for lymphadenopathy?;

4) Did Blood Systems check his weight and compare it to prior weights?;

5) Did he have AIDS at the time of his July, 1987 donation?;

6) What procedures did Blood Systems use to extract the donor's blood?

Because Lombardo has no independent memory as to whether he followed the established guidelines during the interview with the subject donor and because only the donor has knowledge of his understanding of the AIDS-related questions, I find that the information sought by plaintiffs is relevant under Rule 26(b), F.R.C.P.

## NEED FOR PROTECTIVE ORDER

■ Blood Systems asserts that disclosure of the blood donor's identity would violate his right of privacy under the United States Constitution. In determining the discoverability of an HIV-positive donor's identity, courts have applied a balancing test comparing the interest served by the state action with the donor's interest in privacy. A Texas Court of Appeals upheld an order to disclose the identities of blood donors where the order prohibited plaintiff from contacting the donors. *Tarrant County Hospital District v. Hughes,* 734 S.W.2d 675 (Tex.App.1987). The Florida Supreme Court in *Rasmussen v. South Florida Blood Service,* 500 So.2d 533 (Fla. 1987) upheld an appeals court ruling protecting from discovery the names and addresses of 51 blood donors from South Florida Blood Service. The court concluded:

Although we agree with respondent's contentions that Rasmussen's blood donor's rights to privacy are protected by state and federal constitutions, we need not engage in the stricter scrutiny mandated by constitutional analysis. We find that the interests involved here are adequately protected under our discovery rules and approve the decision of the district court.

*Rasmussen,* 500 So.2d at 534–35.

I agree that the interests of both parties may be adequately protected under the Federal Rules of Civil Procedure and that a constitutional analysis need not be applied. Rule 26(c), F.R.C.P., allows the court to issue protective orders, for good cause shown, to protect a party from annoyance, embarrassment, oppression, undue burden or expense. A party who opposes discovery bears the burden of establishing the need for a protective order.

In *Rasmussen,* the plaintiff sought the names and addresses of donors from a non-party blood service. There was no allegation that the blood service was negligent. The court denied disclosure to prevent a fishing expedition that might adversely affect the individuals. This is distinguishable from the present case, since plaintiffs here seek information relating to only one individual who has tested positive for AIDS, and whose blood was supplied to Otto Boutte. In addition, the blood bank is a party that allegedly was negligent in screening this donor. See *Belle Bonfils Memorial Blood Center, supra,* at 1011–12.

The privacy interest of the donor in this case must be weighed against the plaintiffs' rights to obtain relevant information. The donor clearly has a privacy interest in remaining anonymous and avoiding the embarrassment and potential humiliation of being identified as an AIDS carrier. However, plaintiffs' claims require proof that Blood Systems failed to adequately screen the donor and test the blood that infected Boutte in July, 1987. I find that in order to prosecute their claims, it is necessary for

plaintiffs to have controlled access to the donor to discover whether, from the donor's perspective, the screening procedures were followed. As stated in *Belle Bonfils Memorial Blood Center:*

> Since there is a genuine negligence issue, respondent should not be denied the opportunity of pursuing discovery directed at events that transpired when the infected blood was donated.

*Belle Bonfils Memorial Blood Center, supra,* at 1013.

Blood Systems further objects to a disclosure of the donor's identity on the ground that breaching donor confidentiality would rapidly destroy its ability to collect sufficient quantities of blood to satisfy the needs of transfusion recipients in Louisiana and the nation. In *Rasmussen, supra,* the court found that disclosure of information relating to the donor would deter blood donations and for that reason "society's interest in a strong and healthy blood supply will be furthered by the denial of discovery." *Id.* at 538. *See Krygier v. Airweld, Inc.,* 137 Misc.2d 306, 520 N.Y.S.2d 475 (1987). As with the donor's privacy interest in remaining anonymous, however, society's interest in maintaining the availability of an abundant supply of volunteer blood for distribution to hospitals must be weighed against Boutte's rights to the disclosure of information critical to his claim. Furthermore, the plaintiffs' interest is not entirely incompatible with society's interest in a blood supply which is safe as well as plentiful. In cases such as the one *sub judice,* the infected donor is one of only two people who knows whether the screening procedures were followed. This information will serve not only to promote a just outcome in this case, but also will ensure that blood suppliers establish and implement only the highest standards in collecting and selling blood. *Belle Bonfils Memorial Blood Center, supra,* at 1012. Discovery of relevant information from the subject donor is therefore appropriate, although a protective order will be entered to preserve the confidentiality of the donor's identity.

■ Rule 26(c) allows the court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the discovery may be had only by a method of discovery other than that selected by the parties seeking discovery ..." Rule 31 allows a party to take the testimony of any person by deposition upon written questions. I find that a Rule 31 deposition taken under a limited protective order will adequately protect the identity of the donor and allow Boutte to obtain the necessary information.

Counsel shall proceed in exact accordance with Rule 31 except as otherwise provided in this paragraph. Any dispute regarding the questions to be asked shall be referred to me for a ruling prior to the deposition. A subpoena shall be issued to require the attendance of the donor at the deposition, although the donor's name and address need not be indicated on the subpoena. It is sufficient that the donor be identified as "Donor X." Counsel for Blood Systems shall see that the subpoena is served upon the subject donor as soon as possible after receipt of the subpoena from plaintiffs' counsel. The deposition shall take place at a time and place to be arranged by Blood Systems' counsel. A qualified court reporter shall be in attendance to administer the oath and to transcribe the answers to the questions in accordance with Rule 31. The donor need not give his or her name, address, social security number, or any other information specifically aimed at identification of the person. Counsel for Blood Systems may make any other arrangements deemed necessary to protect the identity of the donor, including arrangements that the donor's face be disguised or concealed from the court reporter or any other persons present.

Considering the foregoing, IT IS HEREBY ORDERED that Blood Systems' motion for a protective order is granted in accordance with this ruling.