563 A.2d 531

William R. STENGER, Donna A. Stenger, Craig Stenger and Barry Stenger, Appellants,

v.

LEHIGH VALLEY HOSPITAL CENTER, Samuel Huston, Theodore J. Matulewcz, M.D., Barry H. Slaven, M.D., Hospital Central Services, Inc., H.C.S.C.–Blood Center Trading as Samuel W. Miller Memorial Blood Center, Lyndal Molthan, M.D., and Joseph Yelo, Appellees.

William R. STENGER, Donna A. Stenger, Craig Stenger and Barry Stenger, Appellees,

v.

LEHIGH VALLEY HOSPITAL CENTER, Samuel Huston, Theodore J. Matulewcz, M.D., Barry H. Slaven, M.D., Hospital Central Services, Inc., H.C.S.C.–Blood Center Trading as Samuel W. Miller Memorial Blood Center, Lyndal Molthan, M.D., and Joseph Yelo, Appellees,

Appeal of LEHIGH VALLEY HOSPITAL.

Superior Court of Pennsylvania.

Argued Feb. 28, 1989.

Decided Aug. 2, 1989.

576

Pamela W. Higgins, Philadelphia, for Stenger, appellants (at 2639) and appellees (at 2640).

Georgine A. Olexa, Allentown, for Lehigh Valley, appellants (at 2640) and appellees (at 2639).

David L. Haber, Philadelphia, for Molthan and Yelo, appellees.

Before DEL SOLE, MELINSON and HOFFMAN, JJ.

DEL SOLE, Judge.

An order permitting the filing of interlocutory cross-appeals provides the basis for our consideration of the proper extent of discovery available to the parties in this case.

Appellants, the Stengers, ask us to consider whether the trial court erred in refusing to permit them to discover the identity of a blood donor, (Donor) and the identities of recipients of blood from this particular Donor. In a cross-appeal Appellant, Lehigh Valley Hospital Center, seeks review of that portion of the trial court order which directed it to disclose the delivery dates of blood it acquired which may have been contaminated and the test results later conducted on patients who received this blood. Finding that a limited discovery would not constitute an impermissible violation of the Donor's right to privacy, would not override any societal interest and would not violate any physician-patient privilege, we reverse the trial court's order in part. Because upon balance we find the Stengers' need to discover the identity of other recipients of Donor's blood to be outweighed by the recipients' expectation of privacy, we affirm the trial court's refusal to order the disclosure of their identities. Finally, we affirm the trial

court's ruling regarding the Stengers' right to discover the dates of blood shipments and the test results conducted on recipients of this blood as a proper exercise of its discretion in view of the order's limited nature and the protection afforded the recipients from disclosure of their identities.

In October of 1984, Donna Stenger suffered serious personal injuries as a result of an automobile accident. While a patient at Lehigh Valley Hospital Center, (the Hospital), she received multiple transfusions of blood and blood products. Approximately a year and a half later Donna Stenger, her husband, William, and their sons Barry and Craig commenced suit against the Hospital, Hospital Central Services, Inc., H.C.S.C. Blood Center t/a Samuel W. Miller Memorial Blood Center (the Blood Center), and various individuals. Their complaint sets forth claims of negligence, breach of warranties, strict liability, battery and intentional and negligent infliction of emotional distress. In support of these claims the Stengers allege in their Complaint that in August of 1985, after Donna Stenger's discharge from the Hospital, the Blood Center learned that a donor, who had supplied blood used in Donna Stenger's transfusions, tested positive for the acquired immune deficiency syndrome virus (AIDS). The Complaint also alleges that the Blood Center informed the Hospital that blood products transfused into Donna Stenger's circulatory system were or may have been contaminated with the AIDS virus. The Stengers contend that in November of 1986 Donna Stenger was diagnosed as suffering from AIDS which she contracted from blood transfusions. Within the next two months it is alleged that William Stenger and Craig Stenger, the Stengers' six year old son, were diagnosed as having been infected with the AIDS virus. In an Answer to this Complaint it is denied that Donna Stenger was infected with the AIDS virus as a result of receiving blood and/or blood products supplied to the Hospital by the Blood Center. However it is averred that as a result of a look back procedure, which involves donors who have been confirmed to have HTLV–III antibodies, it was learned

through the Hospital records that a prior donation by one of these donors was given to Donna Stenger.

Discovery in this case proceeded under a protective Order of Court prohibiting the disclosure of information discovered in depositions, interrogatories or other forms of the discovery process. Interrogatories were filed by the Stengers along with a request for production of documents. The defendants responded but the Stengers objected and challenged several responses which prompted them to file a Motion to Compel and a request for sanctions. Following argument the trial court entered an order which is the subject of the instant appeals. The court directed the hospital to disclose the delivery dates of blood received from the Blood Center which may have been contaminated and to disclose the AIDS test results of patients who were recipients of this blood. The court also ruled that the Stenger's would be denied access to the identity of the Donor who supplied the blood ultimately used to transfuse Donna Stenger and to the identity of other blood transfusion recipients.

Cross-appeals were filed challenging this order. The Stengers' claim their need to learn the identity of the Donor and the blood transfusion recipients is compelling and without such they would be unable to prove causation or negligent screening procedures. The Appellees respond by arguing that this information is constitutionally protected and protected by the physician-patient privilege. They further claim that the trial court did not abuse its discretion in refusing the Stengers request because of the public policy protecting confidentiality of this information. These same arguments are also advanced with respect to the Hospital's claim that it should not be required to disclose information about the test results conducted on patients who were transfused with potentially contaminated blood and the dates such blood was received by the Hospital.

We will first address the Stengers claim seeking to discover the identity of the individual who donated blood transfused to Donna Stenger and who later tested positive

for AIDS. The Stengers seek this information to prove causation and to develop their claim that the screening process undertaken by the Blood Center was negligent. In regard to the negligence claim it is noted that at the time the Donor donated the blood which was used in Mrs. Stenger's transfusion a test was not yet developed to identify carriers of the AIDS virus. To identify those donors who were in a high risk category certain screening procedures were often utilized. The Stengers wish to question the Donor as to what, if any, screening procedures he or she underwent prior to donating blood. The Stengers also claim the identity of the Donor is relevant and critical to prove causation. They assert that recent scientific developments could conclusively establish through a comparison of blood samples that Donna Stenger acquired the AIDS virus from the blood donated by the Donor.

The Stengers request must be examined in view of a challenge to it as being violative of the Constitutional right to privacy, the overriding public policy against such disclosures and the physician-patient privilege.

An individual's right to privacy finds support from interpretations of both the United States and the Pennsylvania Constitutions. In *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Supreme Court was asked to review the constitutionality of a New York statute which required that a copy of the prescriptions for certain drugs, which included the name and address of the patient, be recorded by the state in a centralized computer file. The statute was challenged as an improper invasion of the right to privacy and the potential cause of a decline in patient's seeking treatment due their fear of being stigmatized as drug addicts. The Court commented on two recognized privacy interest, the interest in avoiding disclosure of personal matters, and the interest in independence in making certain kinds of important decisions. It was ruled that the New York statute did not, "on its face, pose a sufficiently grievous threat to either interest to establish a constitutional violation." 97 S.Ct. at 877. In reaching this decision the

court remarked on a variety of unpleasant invasions of privacy which are not automatically impermissible. The Court recognized the security system in place for protecting this information from unwarranted disclosures and the purpose for which the statute was designed, the prevention of drugs being diverting into unlawful channels.

■ These same two privacy interests have been recognized by the courts of this Commonwealth. The Supreme Court of Pennsylvania noted that the interest in avoiding the disclosure of personal matters was implicated where a grand jury issued a subpoena duces tecum seeking the production of hospital medical record containing tissue specimen reports. *In re June 1979 Allegheny County Investigating Grand Jury*, 490 Pa. 143, 415 A.2d 73 (1980). The Court stated: "This privacy interest finds explicit protection in the Pennsylvania Constitution, Art. 1, § 1." 415 A.2d at 77. Nevertheless, the Court held that, although under certain circumstances the disclosure of medical data could constitute a constitutional violation, such was not the case where the information was relevant, the grand jury was sworn to secrecy and the proceedings were being overseen by a supervising judge. Thus, every intrusion into an individual's privacy is not impermissible; rather, the individual's right to privacy must be balanced against a countervailing interest which, under the circumstances, may justify an intrusion on privacy. *Denoncourt v. State Ethics Commission*, 504 Pa. 191, 470 A.2d 945, 948 (1983). The competing interests are to be weighed after giving thoughtful attention to certain factors:

> The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the potential for harm in any subsequent nonconsensual disclosure; the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, artic-

ulated public policy, or other recognizable public interest militating toward access.

*United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 578 (3rd Cir., 1980).

In this case the Donor may obviously have an interest in avoiding the disclosure of his or her identity since the Donor may be a carrier of the AIDS virus, a virus which unfortunately is often accompanied by a social stigma. The Stengers claim that this need for privacy protection is outweighed by their need for disclosure to prove their case. While we find this information will be important to the Stengers' negligence claim, the same cannot be said for the Stengers' assertion that this information is necessary to prove causation. The Stengers refer to "recent scientific developments" which would compare "Mrs. Stenger's blood to the blood of th[e] donor," but do not name this test or provide any information about its existence. In view of this speculative use of this private information, we do not find the balance weighs in the Stengers' favor. Further, while it is not admitted that Mrs. Stenger acquired AIDS through the blood transfusion, it is admitted that the donor who provided blood used in that transfusion later tested positive for the HTLV–III antibody. (Contrast *Rasmussen v. South Florida Blood Service*, 500 So.2d 533 (1987), where hospital denied any of 51 donors appeared on a list of AIDS victims.) In sum, the Stengers need to identify the blood Donor is not critical to prove causation.

On the other hand the Stengers' contend the identity of the Donor is important to develop their negligence claim. The Stengers seek to prove that inadequate screening procedures were employed to safely screen the Donor. Since at the time of the Donor's donation no test was yet developed to identify AIDS carriers, it would be important to the Stengers' claim to learn what screening procedures were undertaken. Such screening may have revealed whether the Donor was in a high risk group, or exhibited some of the signs and symptoms which would alert one to the fact that the Donor may be an AIDS carrier. Although those individuals who performed the screening may testify that

the Donor was carefully and completely evaluated, the only individual who would be able to refute this testimony is the Donor. Thus, questioning of the Donor as to what screening he or she underwent at the time of the critical donation would be a significant part of the Stengers' negligence claim.

Although we find the Stenger's need for the Donor's identity important to establish negligence, we must still look to the societal interest which is called to our attention. The cases which have examined similar discovery issues have often referred to this interest, and the denial of such a discovery request has been made upon the basis that discovery rules do not require such information to be revealed where a strong countervailing public policy is found.

In *Rasmussen v. South Florida Blood Service, supra,* the Florida Supreme Court upheld a decision to quash a subpoena which sought the names and addresses of 51 blood volunteers whose donated blood was transfused to the plaintiff. The plaintiff sought this information to assist in the development of his case against the owner and operator of a vehicle which struck him. Plaintiff wished to establish that he was infected with AIDS through a blood transfusion which was an aggravation of the injuries he initially sustained in the accident. In reference to a rule nearly identical to Pa.R.C.P. 4011(b) the court remarked, that although the scope of discovery is generally broad, discovery can be limited or prohibited if it is likely to cause annoyance, embarrassment, oppression or an undue burden or expense. It went on to find that the donors' privacy rights were very strong. Since none of the 51 donors were identified as carriers of AIDS, plaintiff would eventually have to know more than the names and addresses of the donors. The *Rasmussen* court noted that while the plaintiff's interest parallelled the state's interest in ensuring full compensation be provided for victims of negligence, the discovery order requested by plaintiff "would do little to advance that interest. The probative value of the discovery sought by Rasmussen [was] dubious at best." 500 So.2d at 538. The questionable need for this information was balanced against

the effect of disclosure on the private lives of the 51 donors and society's interest in maintaining a strong volunteer blood supply. The court expressed its concern that a volunteer blood donation program would be greatly harmed if donors, fearful of later inquiry into their private lives and potential association with AIDS, decline to donate blood. Further, the lack of restrictions contained in the subpoena was also acknowledged by the court. It commented:" [T]he subpoena in question gives petitioner access to the names and addresses of the blood donors with no restriction on their use. There is nothing to prohibit petitioner from conducting an investigation without the knowledge of the persons in question." 500 So.2d at 537. In closing the court stated, "The potential of significant harm to most, if not all, of the fifty-one unsuspecting donors in permitting such a fishing expedition is great and far outweighs the plaintiff's need under these circumstances." 500 So.2d at 538.

The circumstances surrounding the Stengers' negligence claim differ greatly from those presented to the Florida court in *Rasmussen.* Here there is a single donor identified who after donating blood used in the plaintiff's transfusion, tested HTLV–III positive. A "fishing expedition" would not be involved. Secondly, the need for the information in this case can not be characterized as "dubious at best." The Stengers legitimately need to question the Donor about the screening procedure in order to determine if such a program was adequately followed. Further, there is no need for the questioning to extend into areas other than the screening procedure employed when Donor volunteered to give blood. Inquiry into other sensitive areas of a private nature would not be relevant. Finally, restrictions can be set in place to guarantee the limited scope of questioning and protect the identity of the Donor.

The Florida court's decision in *Rasmussen* was not found to be persuasive by the courts of Texas which considered similar issues. In *Tarrant County Hospital District v. Hughes,* 734 S.W.2d 675 (Tex.Ct.App.1987) the hospital sought to have rescinded an order which required it to

produce documents identifying donors of blood transfused to patients who developed AIDS. The court employed a balancing test comparing the interest served by compelling discovery with the donors' interest in privacy. The court first noted that the plaintiff's interest in this information was legitimate and that the trial court's discovery order afforded the donors protection from public disclosure. The court also found that the hospital failed to establish that the court order was an abuse of discretion because of injury to any societal interest. In conclusion the court reasoned that the potential injury to society from the limited discovery ordered was "no less speculative than a determination that the order would benefit society by discouraging blood donation by those infected with AIDS". 734 S.W.2d at 680. This same rationale was utilized in the later case of *Gulf Coast Regional Blood Center v. Houston*, 745 S.W.2d 557 (Tex.App.1988). Again in this decision, competing interests were balanced with specific attention paid to the restrictive and protective nature of the discovery order. In *Gulf Coast* the Donors were to be referred to by a reference number, their names and addresses were to be sealed with the court, the plaintiffs were prohibited from disclosing the names or addresses to third parties, no party was able to contact any donor without further order of court and the names of the donors were to be destroyed at the final disposition of the case.

Pursuant to a rule of civil procedure, a Colorado court fashioned an unusual discovery order in *Belle Bonfils Memorial Blood Center v. The District Court*, 763 P.2d 1003 (Colo.1988). Therein the court ordered deposition upon written questions. The written questions were directed to be submitted to the clerk of court who was to mail them to the infected donor. Upon completion they were to be returned to the clerk who was to keep the name and address of the donor in the strictest confidence. The questions were to be crafted in such a manner so as to ensure the identity of the donor was not revealed. The court determined that such relief would satisfy the competing interests. The court recognized that the donor had a priva-

cy interest in remaining anonymous and that it was important to maintain the availability of an abundant supply of volunteer blood while at the same time it recognized the plaintiffs' right to the disclosure of all information necessary to pursue their claims. In addition the court cited society's interest of maintaining a safe blood supply.

The Texas decisions in *Tarrant* and *Gulf Coast* were not applied by the Court of Appeals of Ohio in *Doe v. University of Cincinnati*, 42 Ohio App.3d 227, 538 N.E.2d 419 (1988). However in that case the court focused upon the fact that the donor received written assurances at the time of blood donation that any information furnished would remain confidential. The court also concurred with the finding in *Rasmussen* that disclosure of donor information would inevitably result in a decrease in the number of voluntary blood donors, hampering the nation's blood supply.

The legitimate need to keep a strong volunteer blood supply was also cited by the trial court in this case in its reference to *Taylor v. West Penn Hospital*, 136 P.L.J. (1988), a Court of Common Pleas decision from Allegheny County. While we agree that the need to protect our blood supply is a real and important concern, we believe that a limited and protective discovery order can be formulated in this case which will insure that the Stenger's learn the information necessary to establish their claim while at the same time protecting confidentiality. See also: *Stenger v. Stenger* 382 Pa.Super. 75, 554 A.2d 954 (Pa.Super. 1989). We can perceive of no correlation between such a limited and protective order and a reduced number of blood donations, and none has been identified before this court.

■ It is also argued that even a limited disclosure of information acquired during the blood donation process would violate Pennsylvania's physician-patient privilege. This statutory privilege found in 42 Pa.C.S.A. § 5929 restricts a "physician" from disclosing information acquired while attending to a "patient." It was designed to create a confidential atmosphere in which the patient would feel free to disclose all possible information which may be useful in

rendering appropriate treatment. *In re June 1979 Allegheny County Investigating Grand Jury, supra.* While it appears that disclosure of names and addresses may reveal "communications," *Id.*, this case does not necessitate that such "communications" be revealed. The Donor may be identified by a number, or some other method of protecting his or her identity may be utilized, while at the same time the Donor will remain subject to questioning regarding screening. Further we find the physician-patient privilege inapplicable to this case simply because such a relationship was nonexistent between the Donor and the Blood Center. Under 1 Pa.C.S.A. § 1991 a physician is an individual licensed to engage in the practice of medicine and surgery. Although the Blood Center submits that the withdrawal of blood for donation is a "medical procedure" it does not contend that a relationship was established between a physician and a patient. *See Tarrant County Hospital District v. Hughes, supra.* It is not represented that the procedure was performed by a "physician" and there is no indication that the Donor was acting in the role of a "patient" seeking treatment by undergoing the procedures involved in drawing his or her blood. *See Doe v. University of Cincinnati, supra.*

■ Because we find that the physician-patient privilege would not be violated in response to this interrogatory and because we find that a limited discovery order can be formulated by the trial court which will protect the identity of the Donor we remand this matter to the trial court. Upon remand the court may fashion an order which will permit the Stengers' to learn from the Donor the screening procedure employed at the time of donation, but which will protect the identity and confidentiality of the Donor.

■ Turning now to the discovery issue involving the identities of those who were recipients of the Donor's blood, we find the above rationale equally applicable here to conclude that this information does not fall within the ambit of the physician-patient privilege. Although not barred by this privilege we find that the Stengers' were properly prohibited from learning the identities of these recipients.

As stated, individuals enjoy a right to privacy in avoiding the disclosure of personal matters, which must be balanced in this case against the Stengers need for the discovery of information necessary to present their case. The Stengers seek to learn the identities of those individuals who received blood or blood products from the Donor for many of the same reasons they sought to learn the identity of the Donor, to prove causation. They again assert that the "fingerprinting" technique of blood matching could compare the Donor's blood with the blood of Donna Stenger and the blood of any other infected recipients. The Stengers maintain that evidence demonstrating that the other recipients of blood donated by the Donor carry the same AIDS virus which infected Donna Stenger could convince a jury that Mrs. Stenger received AIDS from the transfusion of blood donated by Donor. However, as in their previous claim, the Stengers fail to provide us with any details of this medical technique or any evidence that it does in fact exist. While the Stengers submit that to prove causation it is vitally necessary to learn whether any other individuals who received blood from the Donor also tested positive for AIDS, the trial court did not restrict them from acquiring this information. In fact, the basis for the cross-appeal in this action is the court's order directing the Hospital to furnish the Stengers with information on the test results conducted on these transfusion recipients. Accordingly, upon balance we find that a sufficient need for the disclosure of this private information has not been shown and we affirm the trial court's decision refusing access to the identities of those individuals who were transfused using Donor's blood or blood products.

Remaining for our consideration is the cross appeal presented by the Hospital. The Hospital contends that the trial court erred in requiring it to disclose information concerning AIDS test results on patients other than the plaintiffs in this action. At issue is interrogatory number 28 which requested the Hospital to supply the dates blood and/or blood products were delivered to it from the Blood Center which were or may have been contaminated with the

AIDS virus. Also sought was knowledge of whether such blood and/or blood products were ever administered to any person through transfusion or otherwise, the identity of such a recipient and the results of any AIDS detection tests conducted on these individuals. The Stengers concede in their Brief that they have narrowed their request to apply only to those other persons who also received blood or blood products from the Donor. The trial court refused to permit disclosure of the identity of the blood transfusion recipients, and we have affirmed that ruling. However, the trial court did rule that the Stengers were entitled to learn the dates blood was delivered and the AIDS tests results conducted on the persons who received the Donor's blood or blood products. This information was to be provided absent any indication of the recipients identity. Because the identity of these individuals will be protected from disclosure, we affirm the trial court's decision on this discovery matter.

■ As with the other discovery issues, it is claimed that a disclosure of this information will violate the physician-patient privilege. It is posited that the mere fact AIDS testing was performed tends to reveal communications between a patient and a physician. "Moreover, any data which serves to identify an 'AIDS' victim would tend to reveal communications by the patient which would assuredly blacken the character of the patient given the nature of the disease, the manner in which it is transmitted, and the acute public concern surrounding it." Appellant's Brief at 14. The Hospital concludes that "it is readily apparent that any information regarding 'AIDS' test results and any data relating to times of transfusions may tend to identify the patient." Appellant's Brief at 15. We disagree. We cannot envision in what manner the limited scope of this discovery order, which will be disclosed in an anonymous fashion, will tend to reveal the identities of the patients. If it is disclosed that Donor's blood was transfused to (x) number of patients and (x) number of them later learned they had contracted AIDS, the identities of these individuals will remain protected. In addition, the information divulged does not directly relate to the patient's communications. In

*In Re June 1979 Allegheny County Investigating Grand Jury, supra,* production of the actual tissue reports for certain identified patients, listed alphabetically, was sought. The court found that the tissue reports contained no statutorily privileged communications. A test result performed on a blood sample which reveals the presence of an AIDS virus is much like these tissue reports and we conclude that the discovery of this information in this case does not violate the physician-patient privilege.

■ We likewise find that disclosure of the information which is responsive to the Stengers' interrogatory does not violate the blood transfusion recipient's right to privacy. As stated this information will be provided in an anonymous fashion and it is very limited in scope. Because this limited intrusion is so minimal, on balance it does not outweigh the Stenger's right to discovery which may prove helpful in their effort to establish causation.

■ The Hospital's final claim concerns the production of documents relating to this interrogatory. In their Motion to Compel, in addition to answers to the interrogatories, the Stengers sought the production of documents related to the interrogatories. The trial court in its order did not rule on this issue. Nevertheless, the Hospital claims these documents are protected by the Pennsylvania Peer Review Protection Act and cite the case of *Sanderson v. Frank S. Bryan, M.D., Ltd.,* 361 Pa.Super. 491, 522 A.2d 1138 (1987) to support its claim. The decision in *Sanderson* concerned a plaintiff in a medical malpractice action who requested the production of documents and recordings maintained by a peer review organization which contained evaluations and reviews of the defendant physician. The court found that the appeal involved interpretation of section four of the Peer Review Protection Act, 63 Pa.C.S.A. § 425.1 et seq. which provides in part: "The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery...." Since the records of a peer review committee are not sought in this case, we find the Peer Review Protection Act and the *Sanderson* decision inapplicable to this issue. However, because the trial court

neglected to determine whether production of documents relating to this interrogatory must be produced, we are unable to review its decision. The Stengers contend that "all parties assume that production of corresponding documents, in a redacted fashion, is ... required" by the trial court's order. We cannot make such an assumption. Therefore, on remand the trial court in its sound discretion will determine if production is required and if so the method and manner in which all information which may be confidential and protected will be excised.

In conclusion we affirm that portion of the trial court's order which denies the Stengers request to learn the identity of blood transfusion recipients and which grants their request to learn the dates of blood shipments and AIDS test results conducted on those who were transfused with Donor's blood or blood products. We remand to the trial court for formulation of an appropriate order, which while protecting Donor's identity, will permit the Stengers to learn of the screening procedures Donor underwent at the time of donation. Upon remand the trial court will also consider the extent and manner in which production of documents, if any, will be required.

Affirmed in part. Reversed in part. Case remanded to the trial court for proceedings consistent with this Opinion. Jurisdiction relinquished.