Barbara A. **BORZILLIERI**, As Executrix of the Estate of Barbara Babcock, Plaintiff,

v.

**AMERICAN NATIONAL RED CROSS**, Greater Buffalo Chapter of the American National Red Cross, and New York Plasma, Inc., Defendants.

No. CIV–89–1296C.

United States District Court, W.D. New York.

Oct. 31, 1991.

Protected Order Vacated March 10, 1992.

---

Magner, Love & Morris, P.C. (Gregory P. Krull, of counsel), Buffalo, N.Y., for plaintiff.

Nixon, Hargrave, Devans, & Doyle (Eric J. Ward, of counsel), Rochester, N.Y., for defendants.

## BACKGROUND

CURTIN, District Judge.

This suit is brought by the executrix of Barbara Babcock, who died on July 5, 1989, of Acquired Immune Deficiency Syndrome ("AIDS") allegedly as a result of receiving tainted blood from defendants on April 23, 1984. Plaintiff claims the blood transfused to Mrs. Babcock—unit 31F69863—was infected with the Human Immunodeficiency Virus ("HIV"), the causative agent of AIDS. Unit 31F69863 was supplied to defendants by an unidentified donor ("donor X") on March 26, 1984.

At the time donor X's blood was taken, the cause of AIDS had not been isolated. Ironically, on the very day Mrs. Babcock received her transfusion, a team of scientists from the National Cancer Institute announced their findings identifying the HIV virus as the cause of AIDS. It was not until the spring of 1985, however, that a test was available to screen donated blood for the HIV virus. Prior to the time that test was available, defendants screened blood donors for the possibility of AIDS infection by asking personal history questions and by observing the donor's appearance. Plaintiff argues that the defendants were negligent in conducting this screening process for donor X. This is the central issue in the case.

A modicum of discovery has already been completed about the procedures used by defendants to screen donor X's blood. There is some question, however, as to whether this discovery has yielded sufficient information for plaintiff to bring her case. Defendants have supplied plaintiff with the medical donor card, with name and address redacted, which was filled out by Nurses Trapasso and Strough prior to drawing donor X's blood. See Item 31, Exh. B. Plaintiff has also taken the deposition of Nurse Strough, who was the medi-

cal history nurse responsible for inquiring into donor X's. medical condition and for giving the donor a mini-physical.[1] Nurse Strough, who has taken thousands of blood samples over the years, was able to recount the general procedures used to screen blood donors, but was unable to recall any specifics about taking donor X's blood, even after reviewing an unredacted copy of the medical history card she prepared. See Item 31, Exh. A at 59–62.

Plaintiff argues that it is necessary to depose and/or serve interrogatories upon donor X, the only other person present at the time his or her medical history was taken, to determine what procedures were actually followed by defendants before drawing his or her blood. Defendants have moved for a protective order under Fed. R.Civ.P. 26(c) to bar plaintiff's request to question donor X under oath. Defendants argue that deposing donor X, even if done without revealing his or her identity, would violate his or her state and constitutional rights of privacy. Defendants also argue that permitting discovery from blood donors offends public policy because it will lead to a dramatic drop-off in already low volunteer blood donations. Plaintiff does not seek the identity of the donor. She merely wants to question him or her about the procedures used by defendants on March 26, 1984.

Donor X donated blood again on October 9, 1985. He or she once again was asked questions about his or her medical history and was observed by the nurses present. This unit of blood—# 31F76951—was tested for the presence of HIV antibodies. The test was positive. Defendants then commenced "look back" procedures to trace any prior donations by donor X. After defendants notified Sisters of Charity Hospital in Buffalo, the hospital identified Mrs. Babcock as the recipient of the earlier blood. Mrs. Babcock tested positive for HIV antibodies in November, 1986, and died on July 5, 1989. Defendants also notified donor X of the positive HIV test and

---

1. Nurse Trapasso, who actually drew the blood, has moved to California. Plaintiff does not feel that her testimony would be useful.

placed his or her name on a list of persons who are deferred from donating. Defendants have agreed to supply plaintiff with redacted versions of the October 9, 1985, medical donor card and the letter notifying donor X of his or her test results.

## DISCUSSION

On March 27, 1991, the court met with counsel on this motion. At that meeting, the court directed defendants to make discreet inquiries and to inform the court whether donor X is still alive and able to answer discovery should this court direct it. On May 8, 1991, the court was informed that donor X was, as of that time, still alive and apparently capable of being deposed or answering interrogatories. Item 27. Assuming that that is still the case, the court will now address the merits of defendants' motion.

The question whether to permit limited discovery from blood donors whose blood has infected another person with AIDS has been addressed by numerous courts. The decisions have been about equally divided. Where discovery has been permitted, it has been under restrictive conditions designed to protect the confidentiality of the donor. *See, e.g., Boutte v. Blood Sys., Inc.,* 127 F.R.D. 122, 125–26 (W.D.La.1989); *Mason v. Regional Medical Ctr. of Hopkins County,* 121 F.R.D. 300, 303 (W.D.Ky. 1988); *Snyder v. Mekhjian,* 125 N.J. 328, 593 A.2d 318 (1991) (per curiam); *Belle Bonfils Memorial Blood Ctr. v. District Court,* 763 P.2d 1003, 1013 (Colo.1988); *Gulf Coast Regional Blood Ctr. v. Houston,* 745 S.W.2d 557, 559–60 (Tex.Ct.App. 1988); *Tarrant County Hosp. Dist. v. Hughes,* 734 S.W.2d 675, 678–79 (Tex.Ct. App.1987); *Stenger v. Lehigh Valley Hosp. Ctr.,* 386 Pa.Super. 574, 563 A.2d 531, 539 (1989), *appeal granted,* 577 A.2d 890, 891 (Pa.1990). Where discovery has been denied, it has often been, at least in part, because plaintiffs have requested the names and addresses of large numbers of donors. *See, e.g., Krygier v. Airweld, Inc.,*

137 Misc.2d 306, 520 N.Y.S.2d 475, 477 (N.Y.Sup.Ct.1987); *Bradway v. American Nat'l Red Cross,* 132 F.R.D. 78, 80 (N.D.Ga.1990); *LaBurre v. East Jefferson Gen. Hosp.,* 555 So.2d 1381, 1384 (La.1990); *Rasmussen v. South Fla. Blood Serv., Inc.,* 500 So.2d 533, 536 (Fla.1987). Some courts, however, have denied discovery on facts very similar to those here. *See, e.g., Coleman v. American Red Cross,* 130 F.R.D. 360, 361 (E.D.Mich.1990); *Doe v. American Red Cross Blood Serv.,* 125 F.R.D. 646, 647–49 (D.S.C.1989); *Doe v. University of Cincinnati,* 42 Ohio App.3d 227, 538 N.E.2d 419, 420–21 (1988).[2] This court may take guidance from these decisions, but ultimately must conduct its own balancing.

Discovery under Federal Rule of Civil Procedure 26 is very broad. *See* Fed. R.Civ.P. 26(b). It may be limited in any number of ways on order of the court. Fed.R.Civ.P. 26(c). The party seeking to limit discovery, however, has the burden to show good cause.

## I. CONSTITUTIONAL RIGHT TO PRIVACY

█ Defendants raise three central arguments in support of limiting discovery. Defendants' last argument, which the court will address first, is that permitting discovery from the donor will violate his or her constitutional right to privacy. In *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Court identified two interests protected by the right to privacy. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id.* at 599–600, 97 S.Ct. at 876–77. In *Whalen,* plaintiffs had challenged a New York statute which directed that names and addresses of individuals who obtained prescription drugs for which both a legal and illegal market existed be compiled in a centralized database to aid in law enforcement. Plaintiffs argued that the

---

**2.** Defendants have also supplied the court with several unpublished decisions which have barred discovery. *See* Item 15a, Exhs. 2–7; Item 21, Exh. 1. The court has reviewed these cases but does not feel that they add appreciably to the comprehensive discussions found in the cited cases.

accumulation of this data, and its potential release to the public, violated their constitutional right to privacy. *Id.* at 600, 97 S.Ct. at 877. The Court found, however, that given the confidentiality protections embraced in the law, the statute did not infringe upon plaintiffs' privacy sufficiently to establish a constitutional violation. *Id.* at 603–04, 97 S.Ct. at 878–79.

The right to avoid disclosure of personal matters was reaffirmed by the Court in *Nixon v. Administrator of Gen. Serv.,* 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977). *Nixon* involved a suit by the former President to strike down a congressional statute authorizing archival review of a mountain of Presidential materials, including some personal documents. The Court held that the President's

> claim of invasion of his privacy [could] not be considered in the abstract; rather, the claim must be considered in light of the specific provisions of the Act, and any intrusion must be weighed against the public interest in subjecting the Presidential materials of appellant's administration to archival screening.

*Id.* at 458, 97 S.Ct. at 2797–98. Balancing these interests, the Court held that given the important public interest in preservation of the President's papers, the appellant's status as a public figure, and the limited intrusion of the archival screening, the President's constitutional right to privacy was not abridged. *Id.* at 465, 97 S.Ct. at 2801.

Lower court decisions adopted since *Whalen* have held that the constitutional right to privacy includes protection against unwarranted disclosure of one's medical records or condition. *See, e.g., Schaill ex rel. Kross v. Tippecanoe County Sch. Corp.,* 864 F.2d 1309, 1322 n. 19 (7th Cir. 1988); *In re Search Warrant (Sealed),* 810 F.2d 67, 71 (3d Cir.), *cert. denied sub nom., Rochman v. United States,* 483 U.S. 1007, 107 S.Ct. 3233, 97 L.Ed.2d 739 (1987); *Trade Waste Management Ass'n, Inc. v. Hughey,* 780 F.2d 221, 233–34 (3d Cir.1985); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577–78 (3d Cir.1980). Other courts have recognized the right protects non-disclosure of analogous personal information. *See, e.g., Pesce v. J. Sterling Morton High Sch. Dist. 201,* 830 F.2d 789, 795–97 (7th Cir.1987); *Fadjo v. Coon,* 633 F.2d 1172, 1175 (5th Cir.1981). In each case, however, these decisions have balanced an individual's privacy right against the interests of the state in obtaining personal information and the protections against dissemination of that information. *See, e.g., Pesce,* 830 F.2d at 796–97; *In re Search Warrant (Sealed),* 810 F.2d at 71–72.

Applying these principles here, this court concludes that a properly framed protective order will permit plaintiff to question donor X without at the same time violating his or her constitutional right to privacy. Plaintiff apparently will seek information about two things from donor X. Plaintiff's most important questions are about the methods used by defendants to screen donor X on March 26, 1984, the day unit 31F69863 was donated. These questions implicate donor X's privacy the least because they are not really about donor X. But plaintiff may also seek information to determine whether, at the time donor X donated blood, he or she was a member of a group at risk for AIDS. These questions have the potential to be much more intrusive of donor X's privacy. The question is whether this potential intrusion rises to a constitutional violation.

In *Whalen,* the Court rejected the contention that disclosure of the identity of persons receiving prescription drugs to health department personnel was a violation of privacy. *Whalen,* 429 U.S. at 602, 97 S.Ct. at 878. The Court noted that this limited disclosure was not "meaningfully distinguishable" from "disclosures of private medical information to doctors, to hospital personnel, to insurance companies and to public health agencies. . . ." *Id.* Similarly, in *Nixon,* the Court found no constitutional violation in the disclosure of personal information to archivists, given their unblemished record of discretion. *Nixon,* 433 U.S. at 460, 462, 97 S.Ct. at 2799, 2800. Thus, limited disclosure of personal information to discretionary personnel does not

violate the constitution. It is widespread, unwarranted disclosure that is prohibited.

 Plaintiff does not seek the identity of donor X, nor is there any reason to reveal it. Defendants, including at least one of defendants' attorneys, are already aware who donor X is. Defendants also know that donor X's blood has tested positive for HIV. Were this information to be publicly revealed, donor X's privacy rights might be invaded. Under the protective order this court adopts today, however, this information will not be publicly revealed. Only defendants, who are already sworn to protect donor X's confidentiality, will be able to couple the information plaintiff seeks with a specific person. For all others donor X's identity will remain a secret. It is the coupling of personal information with a person's identity, plus the release of this information, that is intrusive of privacy. Where identity is protected, a blood donor's privacy is not seriously implicated.

Balanced against this limited intrusion is plaintiff's need to question the donor. Barbara Babcock is dead. It is alleged that she died because defendants put into the blood supply blood that was HIV-contaminated. The proliferation of cases like this indicates, tragically, that Mrs. Babcock has not been the only person to die from tainted blood. To have an opportunity to seek recompense for this loss, plaintiff has an absolute need to question the donor about the procedures used by defendants to screen donor X. There is simply no other adequate way to test defendants' contention that its normal screening procedures were used on the day in question. Aside from the donor, only the nurses were present, and Nurse Strough, who did the questioning, has no recollection of taking donor X's blood.

 The method by which plaintiff may question donor X without learning of his or her identity remains to be determined. At least two courts considering this question have permitted the donor to be deposed by written questions. *Boutte,* 127 F.R.D. at 126; *Belle Bonfils Memorial Blood Ctr.,* 763 P.2d at 1013. Other courts have suggested "veiled" depositions, *Snyder,* 593 A.2d at 320 (Pollack, J. concurring), or telephone depositions, *United Blood Serv. v. Second Judicial Dist. Court of State of Nevada,* Civ. No. 20375, slip op. at 2 (Nev. Dec. 20, 1989), [105 Nev. 1050, 810 P.2d 344 (table)], or other measures designed to protect the identity of the donor, *see Mason,* 121 F.R.D. at 303–04; *Stenger,* 563 A.2d at 539. At oral argument plaintiff's attorney said that he would be willing to submit written interrogatories to the donor, to be transmitted through defense counsel. *See* Fed.R.Civ.P. 31. This appears to be the least intrusive method of questioning, and the court shall therefore order such questioning to go forward.

It must be understood that this questioning is being permitted under order of this court after careful analysis of the Red Cross's position. Plaintiff is directed to prepare the written interrogatories and submit them to defendants for transmission to and answer by donor X. If defendants object to any questions, the court should be notified immediately and a meeting will be held.

The order of confidentiality now in effect shall remain. Neither party, nor attorneys nor employees, shall reveal the identity of the donor. The donor is forbidden to reveal to others the fact that he or she has been directed to answer the written questions. If, upon receiving answers to the written interrogatories, plaintiff seeks answers to additional questions, plaintiff may submit a second round of questions under the same procedure. *See* Fed.R.Civ.P. 31.

Plaintiff and defendant shall promptly move to complete this interrogatory procedure. If at any stage of the process the court's assistance is required, the court shall be notified immediately.

Finally, the court again notes that plaintiff does not seek the identity of donor X and is directed to avoid questions which would reveal that identity. The court also notes that plaintiff has stipulated it will not use any of the information discovered through this procedure to initiate any legal proceedings against donor X. The court concludes that deposing donor X under these restrictive conditions will not violate

his or her constitutional right to privacy. *See Mason*, 121 F.R.D. at 303.

## II. NEW YORK STATE PRIVACY RIGHTS

■ Defendants also argue that this court is precluded from issuing an order permitting discovery from the donor except on a finding of "compelling need." *See* N.Y.Pub.Health Law § 2785 (McKinney 1991 Supp.). The State of New York has passed a very strong confidentiality law to prevent HIV carriers from having their HIV status revealed. N.Y.Pub.Health Law § 2780 *et seq.* Among the provisions of that law is § 2785, which provides in part:

> 1. Notwithstanding any other provision of law, no court shall issue an order for the *disclosure of confidential HIV related information*, except a court of record of competent jurisdiction in accordance with the provisions of this section.
>
> 2. A court may grant an order for *disclosure of confidential HIV related information* upon an application showing: (a) a compelling need for disclosure of the information for the adjudication of a criminal or civil proceeding....

*Id.*, § 2785 (emphasis added). The statute also defines "confidential HIV related information" as follows:

> "Confidential HIV-related information" means any information, in the possession of a person who provides health or social services or who obtains the information pursuant to a release of confidential HIV-related information, concerning whether an individual has been the subject of an HIV-related test, or has HIV infection, HIV-related illness or AIDS, or information which identifies or reasonably could identify an individual as having one or more of such conditions, including information pertaining to such individual's contacts.

*Id.*, § 2780(7). If we assume without deciding that § 2785 is applicable to this court, we must look more closely at the statute. Section 2785 prevents a court from ordering *disclosure* of confidential HIV–related information, except on a finding of compel-

ling need or other findings not relevant here. *Id.*, § 2785. "Disclosure" is not specifically defined in the statute, but it is apparent from the definition of "confidential HIV related information" that the disclosure that is barred is disclosure that would identify a particular person as having "been the subject of an HIV-related test, or [an] HIV infection, HIV-related illness or AIDS...." *Id.*, § 2780.

The information sought by plaintiff in this case, pursuant to this court order, will not permit plaintiff, nor any other person other than defendants (who have already had donor X's HIV status disclosed to them), to identify donor X. As such, no "information which identifies or reasonably could identify an individual as ... [HIV-positive], including information pertaining to such individual's contacts" will be disclosed. *Id.* Accordingly, the limited questioning which will be permitted pursuant to this order does not run afoul of § 2785.

■ Even if we further assume, however, that disclosure is implicated by this order, the court also concludes that plaintiff has a "compelling need" for this information. *See id.*, § 2785(2). Although there is no certainty that by questioning donor X plaintiff will have a meritorious case, without this information, it seems very likely that plaintiff's case may fail for lack of proof. *See Tarrant County Hosp. Dist.*, 734 S.W.2d at 678. To have an opportunity to remedy the alleged wrong committed against Mrs. Babcock, plaintiff must be permitted access to the limited information which she seeks.

## III. IMPLICATIONS FOR SAFE AND ADEQUATE BLOOD SUPPLY

■ Finally, defendants argue that this court should exercise its discretion under Rule 26 to bar discovery. Fed.R.Civ.P. 26(c). Defendants contend that if volunteer donors become subject to questioning about personal matters, they will be less likely to step forward to give blood, thus further heightening the crisis over the nation's blood supply. Moreover, defendants suggest that the prospect of later questioning will lead potential donors to

conceal important information during the screening process. Although the court is sensitive to defendants' legitimate concerns, on balance it would appear that public policy favors limited discovery under these circumstances.

One consideration that is paramount is ensuring a *safe* blood supply. Defendants stress the need for a plentiful blood supply, but it is equally, if not more important to ensure that the blood that is donated is healthy. *Boutte,* 127 F.R.D. at 126; *Belle Bonfils Memorial Blood Ctr.,* 763 P.2d at 1011. Unlike the suggested inquiries in *Krygier,* 520 N.Y.S.2d at 477; *Bradway,* 132 F.R.D. at 80; *LaBurre,* 555 So.2d at 1384; and *Rasmussen,* 500 So.2d at 536, where the names and addresses of large numbers of donors was sought, plaintiff in this case only seeks information from a donor known to be HIV-positive. There is no harm to society's interests from discouraging persons infected with this virus from donating blood. *Boutte,* 127 F.R.D. at 126; *Snyder,* 593 A.2d at 324 (Pollack, J. concurring).

Second, this case involves a blood donor who donated blood prior to the 1985 introduction of the ELISA test that screens out HIV-positive blood. Although this test may not be foolproof, it reduces the importance of the verbal screening process that took place here. *See id.* Thus, over time there will likely be many fewer instances where plaintiffs seek the kind of information sought in this case. Accordingly, any impact such questioning may have on the blood supply will be only temporary.

Balanced against these limited harms to defendants' interests is society's interest in permitting injured persons at least some redress for their injuries. *See id.* Plaintiffs must be permitted to pursue their claims against blood centers to ensure that tragedies such as befell Mrs. Babcock are less likely to occur in the future. *See Boutte,* 127 F.R.D. at 126; *Snyder,* 593 A.2d at 324 (Pollack, J. concurring); *Gulf Coast Regional Blood Ctr.,* 745 S.W.2d at 559; *Tarrant County Hosp. Dist.,* 734 S.W.2d at 678; *Stenger,* 563 A.2d at 537.

Accordingly, the court hereby issues a protective order permitting discovery under the restrictive conditions outlined above.

So ordered.

## ORDER

March 10, 1992.

IT IS ORDERED, that the Court's prior orders granted on October 31, 1991 and January 10, 1992 hereby are vacated.

